ORIGINAL

FILED
SEP 2 8 2007
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

WEEKS MARINE, INC., :
Plaintiff, :
v. : No. 07-700 C
THE UNITED STATES :
Defendant. :

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION AND DECLARATORY JUDGMENT

Michael H. Payne, Esquire
Payne Hackenbracht & Sullivan
220 Commerce Dr., Suite 100
Fort Washington, PA 19034
(215) 542-2777
(215) 542-2779
mhp@phslegal.com

Counsel of Record for
WEEKS MARINE, INC.

Of Counsel:
Joseph A. Hackenbracht, Esquire
Timothy A. Sullivan, Esquire
Payne Hackenbracht & Sullivan
220 Commerce Dr., Suite 100
Fort Washington, PA 19034

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . ii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION PERMANENT INJUNCTION AND DECLARATORY RELIEF . . . . . . . . . . . . . . . . . . . . . 1

I. ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . 1

II. STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . 2

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . 6

A. Jurisdiction Standard of Review . . . . . . . . . 6

B. The Use of Negotiated IDIQ/MATOC Contracts To Procure Dredging Services Violates Applicable Law and Regulation . . . . . . . . . . . . . . . . . . . 7

C. The Solicitation Impermissibly Limits Competition Throughout An Entire Industry Doing Work For the South Atlantic Division Of The Corps of Engineers For A Period Up To Five Years In Violation Of Applicable Law and Regulation . . . . . . . . . 22

D. The Denial And Limitation Of Statutorily Authorized Bid Protest and Dispute Procedures For An Entire Industry Within An Entire Geographic Region For A Period Of Up to Five Years Violates Applicable Procurement Laws and Regulations . . . . 24

E. Criteria For Injunctive Relief . . . . . . . . . 25

F. Likelihood of Success on The Merits . . . . . . . 26

G. Plaintiff Will Suffer Irreparable Harm If Relief Is Not Granted . . . . . . . . . . . . . . . . . . 27

H. The Balance of Hardships Decidedly Favor Plaintiff . . . . . . . . . . . . . . . . . . . . . 29

I. Injunctive Relief Will Serve The Public Interest . . . . . . . . . . . . . . . . . . . . . 29

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . 30

# TABLE OF AUTHORITIES

**CASES** **Pages**

BlackLight Power, Inc. v. Rogan, 295 F.3d 1269, 1273 (Fed.Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . 10

Data Gen. Corp. v. Johnson, 78 F.3d 1556, (Fed.Cir.1996) . . 27

Erinys Iraq,Ltd. v. U.S., 2007 WL 2714167, (Fed. Cl., Sept. 14, 2007) . . . . . . . . . . . . . . . . . . . 6

Gray v. United States, 886 F.2d 1305, (Fed.Cir. 1989) . . . . 10

Isratex, Inc. v. United States, 25 Cl.Ct. 223 (1992) . . . . 30

Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 35 (1998) . . . . . . . . . . . . . . . . . . . 10

Magellan Corp v. United States, 27 Fed. Cl. 446, (1993) . . 26,27

Merck & Co., Inc. v. Hi-Tech Pharmacal Co., Inc., 482 F.3d 1317 (Fed.Cir. 2007) . . . . . . . . . . . . . . . 10

Overstreet Electric Co. v. U.S., 47 Fed. Cl. 728 (2000) . . . 27

Rex Serv.Corp. v. United States, 448 F.3d 1305, 1307 (Fed.Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . 6

Saratoga Dev. Corp. v. United States, 21 F.3d 445, (D.C.Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . 7

Statistica, Inc. v. Christopher, 102 F.3d 1577, 1581 (Fed.Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . 26

TRW Environmental Safety Systems, Inc. v. United States, 16 Cl.Ct. 516 (1989) . . . . . . . . . . . . . . . . . . . . 26

Tesoro Hawaii Corp. v. United States, 405 F.3d 1339, (Fed.Cir.2005) . . . . . . . . . . . . . . . . . . . . . . . 11

United Int'l Investigative Services, Inc., v. U.S., 41 Fed. Cl. 312,(1998) . . . . . . . . . . . . . . . . . . . 29

**CASES** **Pages**

Virginia Petroleum Jobbers Ass'n v. Federal Power Commission, 259 F.2d 921 (D.C. Cir. 1959) . . . . . . . . . . . . . . . . . . 25

Washington Metropolitan Area Transit Authority v. Holiday Inn, 559 F.2d 841 (D.C. Cir. 1972) . . . . . . . . . . . . . . . . . . 26

**GAO DECISIONS**

ARPO Corp., B-227055, 87-2 CPD 165 . . . . . . . . . . . . . . 20

F&H Manufacturing Corporation, B-244997, 91-2 CPD 520 . . . . . 20

The Defense Logistics Agency-Recon., 67 Com. Gen. 16, 87-2 CPD 365 . . . . . . . . . . . . . . . . . . . . . . . . 20

**STATUTES**

5 U .S.C. § 706(2)(A) . . . . . . . . . . . . . . . . . . . . . . 7

10 U.S.C. § 2304(a) . . . . . . . . . . . . . . . . . . . . . . 3,7

10 U.S.C. § 2304(a)(1)(B) . . . . . . . . . . . . . . . . . . . 20

10 U.S.C. § 2304(a)(2)(A) . . . . . . . . . . . . . . . . . . . 10

28 U.S.C. § 1491(b) . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. § 1491(b)(1) . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. § 1491(b)(2) . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. §1491(b)(3) . . . . . . . . . . . . . . . . . . . . 29

31 U.S.C. § 3551(2)(A) . . . . . . . . . . . . . . . . . . . . 6

33 U.S.C. §§ 622 and 624 . . . . . . . . . . . . . . . . . . . 24

**REGULATIONS**

48 C.F.R. 6.401(a),(b)(1) . . . . . . . . . . . . . . . . . . . 9

FAR 2.101 . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

| REGULATIONS | Pages |
|---|---|
| FAR 6.401(a) | 3,8,10 |
| FAR 6.401(a)(1) | 11 |
| FAR 6.401(a)(2) | 11 |
| FAR 6.401(a)(3) | 12 |
| FAR 6.401(a)(4) | 13 |
| FAR 6.405(a) | 20 |
| FAR 9.104 | 6,12,13,14 |
| FAR 9.104-1 | 4 |
| FAR 14.103-1(a) | 9 |
| FAR 15.101 | 15 |
| FAR 16.505(a)(9) | 24 |
| FAR 33.1 | 24 |
| FAR 36.103 | 3 |
| EFARS 16.501, S-103(a) | 16 |
| EFARS 36.205(a) | 24 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WEEKS MARINE, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. |
| | : | |
| THE UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION AND DECLARATORY JUDGMENT**

Plaintiff, Weeks Marine, Inc., ("Weeks"), challenges the decision of the U.S. Army Corps of Engineers, Jacksonville District ("Corps") to solicit the dredging and shore protection projects in the southeastern United States using negotiated procurement of indefinite delivery indefinite quantity ("IDIQ") multiple-award task order contracts ("MATOC"). The Plaintiff requests the Court to enjoin the Corps from proceeding with the solicitation, and to direct the Corps to procure its dredging and shore protection projects using sealed bid procedures as required by the Federal Acquisition Regulation.

## I. ISSUES PRESENTED

The issues in this case are (1) Whether the solicitation for the procurement of dredging through the use of negotiated IDIQ/MATOC contracts violates applicable procurement laws and regulations and (2) Whether a solicitation that limits

competition by an entire industry in an entire region (the South Atlantic Division) of the Corps of Engineers for a period of up to five years violates applicable procurement laws and regulations, and (3) Whether the denial and limitation of statutorily authorized bid protest and dispute procedures for an entire industry within an entire geographic region for a period of up to five years violates applicable procurement laws and regulations.

## II. STATEMENT OF THE CASE

The performance of dredging to deepen and maintain the navigable waters of the United States has been performed for many years by the U.S. Army Corps of Engineers through the solicitation and award of dredging contracts on a competitive basis. Most dredging projects have been solicited through the use of sealed bidding where the competition is on the basis of price and contracts are awarded to the lowest responsive and responsible bidder. The solicitation at issue represents a departure from that long-established procurement policy and is a dramatic shift to the procurement of dredging through the use of the negotiated procedures specified in FAR, Part 15, and the further utilization of indefinite delivery/indefinite quantity ("IDIQ") and multiple award task order contracts ("MATOC").

The use of the negotiated (Competition by Negotiation) procedures specified in FAR, Part 15, much less the further use

of IDIQ/MATOC contracts violates the requirements of the Competition in Contracting Act, 10 U.S.C. § 2304(a), as codified in FAR 36.103 and FAR 6.401(a). The law and the regulations require that sealed bidding shall be used by contracting officers if four conditions are met. As will be explained in the argument section below, all of those conditions are met in this case and there is no justification for issuing the solicitation under anything other than sealed bidding procedures.

The failure to abide by the law and the regulations has the effect of restricting competition in an industry already limited in size by the marketplace. The significant investment in equipment and the gaining of the experience necessary to estimate and perform dredging projects has resulted in a small, but very capable industry. The solicitation provides that at least two contractors will be selected for each of the four groups, although the Corps of Engineers has indicated in response to industry questions that it intends to award master MATOC contracts to all those who are evaluated as qualified under each group. The problem is that even if more than two contractors are selected for a group, the number will still be small (probably no more than four or five) in an industry that is inherently small and limited will become even smaller and more limited.

It will be difficult, if not impossible, for new companies to join the industry and those contractors who are not selected,

but who have invested considerable sums to acquire dredging equipment, will have no opportunity (for up to five years) to compete for the dredging contracts that they need to recoup their investments. This will work a particular hardship on small business dredging companies, many of which own only one or two dredges and do not have the ability to travel beyond the confines of the South Atlantic Division to seek other work. What all this means is that even though the Corps of Engineers intends to solicit competitive proposals in each of the four dredging groups, the "closed shops" that will result are nevertheless contrary to the spirit and intent of the Competition in Contracting Act and related procurement regulations.

The solicitation provides that the master MATOC contractors will be selected on the basis of an evaluation of their proposals, without discussions, that will consider four evaluation factors: Technical Merit, Price, Past Performance, and Utilization of Small Business Concerns. The "Technical Merit" evaluation factor calls for nothing more than a showing that the offeror actually possesses dredging equipment and that required certifications have been obtained, and the rating will be either "acceptable" or "not acceptable." The stated criteria for assessing "Technical Merit" in each group are simply a reiteration of the standards that are part of a routine pre-award responsibility determination as specified in FAR 9.104-1,

"General Standards" utilized in the evaluation of sealed bids under FAR, Part 14. In other words, there is no rational basis to utilize the negotiated procurement format simply to evaluate "Technical Merit" as defined by the solicitation. In reality, none of these so-called "Technical Merit" factors address an offeror's technical approach or technical plan to perform the work and they provide no basis to compare the "Technical Merit" of competing offerors.

Once those offerors with acceptable "Technical Merit" are selected, the solicitation provides that "the Source Selection Authority will use a trade-off process (considering past performance, utilization of small business concerns, and price) to determine which offer(s) represent the best value to the Government." While cautioning offerors that "proposals will be evaluated for acceptability but will not be ranked by non-price factors," the solicitation informed offerors that:

> Past Performance is considered significantly more important than price. Utilization of Small Business Concerns is considered significantly less important than Past Performance and Price. All evaluation factors, when combined, are significantly more important than price.

In essence, the procurement calls for a pass/fail evaluation of responsibility under the guise of a "Technical Merit" evaluation, without any basis to assess the proposals on the master MATOC contracts or the ensuing task orders on anything other than price. It follows that there is no

legally supportable basis to procure these dredging services under any procurement method other than sealed bidding, with ample protection of the government's right to deal with responsible contractors under the dictates of FAR 9.104.

## III. ARGUMENT

### A. Jurisdiction and Standard of Review

The United States Court of Federal Claims has "jurisdiction to render judgment on an action by an interested party objecting to ... any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1); Erinys Iraq, Ltd. v. U.S., 2007 WL 2714167, (Fed. Cl., Sept. 14, 2007). Section 1491(b)(2) explicitly provides that, in any action under 1491(b), "the court may award any relief that the court considers proper, including declaratory and injunctive relief."

The CICA defines "[t]he term 'interested party', with respect to a contract or a solicitation or other request for offers ... [as] an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551(2)(A); see also Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed.Cir. 2006). Weeks has successfully performed a considerable number of dredging contracts for the Corps of Engineers, many in the geographic region that is encompassed by

the subject solicitation. It is a prospective offeror on this solicitation. Therefore, Weeks is an interested party and has standing to invoke the court's jurisdiction in this matter.

In evaluating an agency procurement decision the Administrative Procedure Act, 5 U.S.C. § 706 (the "APA") gives the court discretion to set aside agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U .S.C. § 706(2)(A); PGBA, LLC v. United States, 389 F.3d 1219, 1224-28 (Fed.Cir. 2004). Agency action is deemed to be arbitrary or capricious when it lacks any rational basis or is an abuse of discretion. Saratoga Dev. Corp. v. United States, 21 F.3d 445, 456 (D.C.Cir. 1994). In addition, agency procurement procedures that are contrary to applicable laws and regulations violate the APA standard. 5 U.S.C. § 706(2)(A); Bannum v. U.S., 404 F.3d 1346 at 1351, (Fed. Cir. 2005). These standards form the framework by which to measure the Corps' decision to use negotiated IDIQ/MATOC contracting procedures to procure dredging services.

### B. The Use Of Negotiated IDIQ/MATOC Contracts To Procure Dredging Services Violates Applicable Law And Regulation

The general requirement to use competitive procedures in government procurements is codified in 10 U.S.C. § 2304(a), as follows:

§ 2304. **Contracts: competition requirements**

**(a)(1)** Except as provided in subsections (b), (c), and (g) and except in the case of procurement procedures otherwise expressly authorized by statute, the head of an agency in conducting procurement for property or services—

**(A)** shall obtain full and open competition through the use of competitive procedures in accordance with the requirements of this chapter and the Federal Acquisition Regulation; and

**(B)** shall use the competitive procedure or combination of competitive procedures that is best suited under the circumstances of the procurement.

**(2)** In determining the competitive procedure appropriate under the circumstances, the head of an agency-

**(A)** *shall* solicit sealed bids if-

**(i)** time permits the solicitation, submission, and evaluation of sealed bids;

**(ii)** the award will be made on the basis of price and other price-related factors;

**(iii)** it is not necessary to conduct discussions with the responding sources about their bids; and

**(iv)** there is a reasonable expectation of receiving more than one sealed bid; and

**(B)** *shall* request competitive proposals if sealed bids are not appropriate under clause (A).

(Emphasis supplied). These criteria have also been codified in FAR 6.401, as follows:

> **6.401 Sealed bidding and competitive proposals.**
>
> Sealed bidding and competitive proposals, as described in Parts 14 and 15, are both acceptable procedures for use under Subparts 6.1, 6.2; and, when appropriate, under Subpart 6.3.
>
> (a) Sealed bids. (See part 14 for procedures.) Contracting officers *shall* solicit sealed bids if-
>
> (1) Time permits the solicitation, submission, and evaluation of sealed bids;
>
> (2) The award will be made on the basis of price and other price-related factors;
>
> (3) It is not necessary to conduct discussions with the responding offerors about their bids; and
>
> (4) There is reasonable expectation of receiving more than one sealed bid.
>
> (b) Competitive proposals. (See part 15 for procedures.)
>
> (1) Contracting officers may request competitive proposals *if sealed bids are not appropriate under paragraph (a) above*.
>
> . . . .

48 C.F.R. 6.401(a), (b)(1) (emphasis supplied). Thus, whenever the four enumerated criteria are met, both statute and regulation <u>require</u> that sealed bids be solicited under FAR 14, and <u>not</u> competitive proposals under FAR 15. <u>See also</u> FAR 14.103-1(a), which provides that "[s]ealed bidding <u>shall</u> be used whenever the conditions in 6.401(a) are met" (emphasis supplied).

The use of the imperative "shall" in the statute, and in the FAR, emphasizes that the use of sealed bidding under the conditions stated is mandatory. FAR 2.101 clearly states that "[s]hall

denotes the imperative." This Honorable Court has also held that use of the word "shall" generally denotes the imperative, imposing a duty or describing a mandatory action. Merck & Co., Inc. v. Hi-Tech Pharmacal Co., Inc., 482 F.3d 1317 (Fed.Cir. 2007), citing BlackLight Power, Inc. v. Rogan, 295 F.3d 1269, 1273 (Fed.Cir. 2002); Gray v. United States, 886 F.2d 1305, 1307-1308 (Fed.Cir. 1989). Indeed, the use of the mandatory "shall" normally creates an obligation which is "impervious" even to "judicial discretion." Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 35 (1998) (holding that plain effect had to be given to mandatory statutory language even if so doing "will reverse the longstanding practice under the statute and the rule").

Accordingly, the question presented in this proceeding is whether or not the employment of a negotiated MATOC procurement by the Corps is in violation of the statute and the FAR. Weeks submits that all four criteria set forth in FAR 6.401(a) and 10 U.C.S. § 2304(a)(2)(A) are clearly satisfied in the case of most if not all the dredging projects included in the MATOC solicitation - requiring the use of the sealed bidding procedures. As this Court has explained,

> We construe a regulation in the same manner as we construe a statute, by ascertaining its plain meaning . . . . If we conclude that the terms of the regulation are unambiguous, no further inquiry is usually required . . . When there is no ambiguity in the meaning of the regulation, it is the duty of the courts to enforce it according to its obvious terms and not to insert words or

> phrases so as to incorporate therein a new and distinct provision . . . .

Tesoro Hawaii Corp. v. United States, 405 F.3d 1339, 1346-1347 (Fed.Cir.2005) (citations and internal quotations omitted).

The first criteria, that "time permits the solicitation, submission and evaluation of sealed bids," (FAR 6.401(a)(1)) is evident from the fact that the projects listed in the solicitation, for the most part, are projects that have been performed on a periodic basis for many years. They are included in the Corps of Engineers civil works budget and they are announced to the industry yearly at an annual meeting between the Corps and the dredging industry. These projects, since they are known and scheduled well in advance have, for the most part, always been solicited through the sealed bidding procedures in FAR, Part 14. History demonstrates that there has been time to employ sealed bidding and there is no reason that these projects cannot continue to be solicited as they have been in the past.

The second criteria, that "the award will be made on the basis of price and other price-related factors" (FAR 6.401(a)(2)), is evident from both past practice and the wording of the solicitation. Historically, the competition in the dredging industry has been price competition and awards to the lowest bidders has enabled the Corps to successfully accomplish its dredging mission throughout the country. Although the solicitation provides for evaluation factors described as

"technical merit, past performance, and small business utilization," an examination of these factors reveals that they are nothing more than the standard pre-award responsibility determination that is conducted in sealed bidding under FAR 9.104. It is not enough for the Defendant to simply state that contracting by negotiation is required because of the need to evaluate "technical merit, past performance, and small business utilization," there must be a showing that these evaluation factors can only be considered in the context of a FAR, Part 15, procurement. If, as is the case here, the stated "evaluation" factors simply parrot the standard responsibility determination that is made under sealed bidding, the Corps does not have a legal or a rational basis not to continue employ sealed bidding procedures.

The third criteria, that "it is not necessary to conduct discussions with the responding offerors about their bids," (FAR 6.401(a)(3)), is evident from past practice and by virtue of the fact that the solicitation states that it is the Corps' intention to make an award without discussions. (Solicitation, 00100B-9). Since dredging has historically been successfully procured using sealed bidding as the dominant procurement method, and since sealed bids are evaluated solely on the basis of price and price-related factors, it is evident that the competition in the dredging is price competition. As discussed below, the

solicitation does not provide for an evaluation of technical approach or the technical dredging methods to be employed by the offerors, and the "technical merit" evaluation factor is nothing more than a requirement to demonstrate that the offerors possess dredging equipment and have obtained required certifications. These requirements are no different than the standard responsibility determinations that are made in the evaluation of sealed bids under FAR 9.104.

The fourth and final criteria, that "there is a reasonable expectation of receiving more than one sealed bid," (FAR 6.401(a)(4)), is demonstrated by the fact that the solicitation expresses an intent to award at least two master MATOC contracts in each of the four groups and, historically, more than one bid has been received on virtually all dredging solicitations.

In essence, the procurement calls for a pass/fail evaluation of responsibility under the guise of a "Technical Merit" evaluation, to be followed by a tradeoff of past performance, utilization of small business concerns, and price without any explanation of what is being traded off. If, as stated in the solicitation, the proposals will not be ranked by non-price factors, it appears that past performance and small business utilization will simply be determined on a pass/fail basis. In addition if, as the solicitation goes on to say "price will not

be given a score," there will be nothing left to trade off.[1] Nothing will have been scored or ranked, and the Corps of Engineers will simply determine which offers to rate as acceptable on each of the four evaluation factors.

As to the ensuing individual task orders, despite the Corps' pronouncements to the contrary, the only conceivable discriminator will be price, just as it is in the case of sealed bidding. There is no question that the responsibility determination embodied in a typical pre-award survey under sealed bidding, as specified by FAR 9.104, provides the very same protections to the government as this negotiated MATOC solicitation.

The plan for the evaluation of the ensuing task order proposals by the master MATOC contractors in each group is even more troubling. Even though those selected for the master MATOC contracts will have met all of the acceptability (essentially "pre-qualification") requirements of the solicitation, and will have thereby demonstrated their technical merit, past

[1] Since there is no pricing information required by solicitation for the master MATOC contracts, the solicitation requires offerors to submit proposals on task orders that have been assigned to each of the four groups. In other words, if a small business concern wants to be selected as one of the master small business MATOC contractors, it must not only submit a proposal in response to the MATOC solicitation, but it must also furnish (together with its proposal) a priced proposal to perform the first task order. Initial task orders for each group were added by amendment to the solicitation.

performance, utilization of small business, and realistic pricing, the Corps nevertheless intends to conduct a best value source selection on each of the task orders. The solicitation states that "the Government shall always consider past performance (including quality, timeliness and cost control), equipment availability, and equipment capability as evaluation factors."

The Government further indicates that it "may also include any of the following as additional evaluation factors: (1) potential impact on other orders placed with the contractor, (2) minimum order requirements, and (3) urgency of need." Furthermore, the Corps indicates that it will use either one of the two source selection processes provided in FAR 15.101, the tradeoff process or the lowest price technically acceptable process, whichever it determined to be appropriate for a particular task order. In other words, even though the master MATOC contractors have effectively been pre-qualified, the Corps is reserving the right to employ unnecessary and subjective evaluation factors in the evaluation of task order proposals when the only true discriminator between competing task order proposals will be price. That being the case, sealed bidding procedures should continue to be employed.

The Corps' solicitation anticipates multiple awards of indefinite delivery contracts to a number of offerors to accomplish substantially all of the dredging and beach nourishment projects in the southeastern United States over the next five years. However, the agency's procurement regulations place substantial restrictions on the situations in which indefinite delivery contracts can be used. The restrictions on the use of indefinite delivery contracts are clearly enunciated in the Corps' Engineer Federal Acquisition Regulation Supplement (EFARS), as follows:

> IDC [indefinite delivery contracts] may be used *only if* one or more of the following conditions applies -
>
> 1) The cost to procure the required services or supplies individually through normal selection procedures is uneconomical compared to the cost of the services or supplies themselves;
>
> 2) The time required to procure the required services or supplies individually through normal selection procedures will cause an unacceptable delay in fulfilling the requirements;
>
> 3) Technical continuity among related requirements is essential;
>
> 4) Significant cost savings in contract price and/or contract administration will accrue by having a single contractor perform several similar requirements; or
>
> 5) Management of more than one contractor on an installation presents unacceptable administration problems in such areas as coordination and movement of work forces and equipment, separation and acceptance of contractor responsibility, and verification of performance and progress.
>
> (EFARS 16.501, S-103(a), emphasis in original.)

Four of the five conditions clearly do not apply to this proposed procurement scheme to accomplish the Corps' dredging mission in the southeastern United States. The first condition addresses the cost of procurement through normal selection procedures versus the cost of the dredging itself. Since the various projects are in the range of hundreds of thousands to millions of dollars, the cost of normal selection procedures cannot possibly outweigh the cost of the specific project to be dredged. The third condition does not apply as there is no need for technical continuity among related requirements. Furthermore, the fourth condition is not met because the Corps does not plan on a single contractor performing several projects within one task order; the separate task orders, based upon divergent geographical locations will not reduce contract administration. It is also evident that the last condition does not apply since the dredging projects are not at the same location, but are widely scattered throughout the South Atlantic Division.

The last remaining condition, when examined in light of the facts surrounding this procurement, is equally inapplicable. Funding for the Corps' dredging program is subject to the Civil Works authorization legislation in Congress and the projects are budgeted a year in advance. Therefore, the projects that are to be dredged are known to the Corps well in advance of the time for

the solicitation of bids or offers. Furthermore, the projects that are to be dredged have specific authorized limits and have been historically dredged over a number or years. Absent exigent circumstances such as Hurricane Katrina, the Corps plans, budgets and obtains authorization for its dredging projects. In fact, under its regulations it is required to conduct and does conduct a yearly meeting with the dredging industry to project what dredging will occur. Given these facts, it is difficult to conceive of how the Corps could reasonably contend that the IDIQ contracts are necessary to avoid an unnecessary delay.

The dredging industry has competed for many years on the basis of price. Dredging contractors have developed and evolved with the single goal of creating a business model that will foster the lowest possible prices. This involves a significant investment in large and expensive dredging equipment tailored to productively perform different kinds of dredging projects in greatly varying and sometimes unpredictable subsurface conditions. In addition, a great deal of time and effort has been devoted to the development of sophisticated estimating systems that are designed to accurately predict the cost of performing that widely varying work while factoring in the probable government estimate and the likely prices of competitors. It is, in a certain sense, a high stakes "game"

where the players try to predict what it will take to be the low bidder at a price that will earn a profit.

Now, suddenly, the Corps, and only in the South Atlantic Division, has decided to dramatically alter the rules of the "game." Contractors whose businesses have been developed to facilitate competition on the basis of price are being told that they must now enter the proposal preparation business, and that price will only be one of a number of evaluation factors. This is troubling to the Plaintiff, and indeed to the dredging industry, because the sort of proposals envisioned by this MATOC solicitation, and the ensuing task orders, do not require technical proposals dealing with such things as technical merit or competing dredging methods and approaches.

The "proposals" envisioned by the solicitation will virtually be the same from task order to task order, except for the prices, and the only variation will be the subjective assignment of weight to the subjective evaluation factors by the contracting officer. This will cause an industry that has been built to compete and has, in fact, successfully competed on the basis of price to face the intangible and subjective prospect of "best value" determination where price may not be the discriminator among competing offers. Although it is conceivable that this change in procurement policy could be justified if there were factors other than price or the standard

responsibility criteria specified in FAR 6-405(a) at issue, it cannot be justified where there is no basis to evaluate competing proposals on any other basis. Although the Competition in Contracting Act directs contracting agencies to use the competitive procedure that is best suited to the circumstances of the procurement, 10 U.S.C. § 2304(a)(1)(B), CICA requires agencies to use sealed bidding when the four conditions enumerated above are present. F & H Manufacturing Corporation, B-244997, 91-2 CPD ¶ 520. Agency determinations that the conditions requiring the use of sealed bidding are not present must be reasonable, but in this case they were not. The Defense Logistics Agency-Recon., 67 Com.Gen. 16 (1987), 87-2 CPD ¶ 365, affirming ARPO Corp., B-227055, Aug. 17, 1987, 87-2 CPD ¶ 165.

In sealed bidding, the bid prices and the Independent Government Estimate are publicly announced at the bid opening. As explained above, this information is vital to dredging contractors who factor this historical information into their estimates to perform future work. Although the Defendant proposes to continue to release the government estimates after each task order is awarded, the prices of the offerors who compete for the individual task orders will only be released if all of the offerors on a particular task order have previously signed a consent form. Since it is not possible to predict whether any of the offerors will refuse to give their consent,

there is no assurance that the pricing information that facilitates intelligent bidding will continue to be available. This will not be in the government's long term interest and will undoubtedly lead to the submission of higher prices. It is free and open competition that leads to the lowest possible prices,

The South Atlantic Division of the Corps of Engineers is refusing to recognize the truth in the old adage "If it ain't broke, don't fix it." The sealed bidding system has enabled the Corps to maintain an available base of competent and experienced dredging contractors to maintain the navigable waters of the United States. The subject solicitation will restrict and potentially reduce that industry base by limiting competition. In fact, contractors who have successfully performed dredging projects in the past could be eliminated from the right to compete for up to five years.

Interestingly, the Plaintiff, one of the largest and most capable dredging contractors in the United States, does not fear that it will fail to be selected as a master MATOC contractor, although it is concerned that the application of the overly-subjective criteria proposed by the Defendant's evaluation scheme could result in the unfair rejection of awardable, lower priced, proposals. The Plaintiff has filed this protest because it recognizes that the new procurement policy that is being proposed is bad for the dredging industry and for the Corps of Engineers.

The straightforward and predictable sealed bidding system that has been successfully employed to procure dredging for so many years, will be replaced by an unwieldy, unpredictable, and largely subjective source selection process that will make it more difficult to prepare intelligent pre-bid estimates. In addition, valuable time will be lost preparing proposals addressing subjective evaluation factors when everyone, including the Corps of Engineers, knows that price will be the only discriminator in almost all of the procurements.

The complicated nature of what is being proposed is evident from a review of the pending solicitation that has been amended eight times and has been the subject of three sets of extensive written responses by the Contracting Officer to questions and concerns posed by many members of the dredging industry.

**C. The Solicitation Impermissibly Limits Competition Throughout An Entire Industry Doing Work For The South Atlantic Division Of The Corps of Engineers For A Period Up To Five Years In Violation Of Applicable Law And Regulation**

The number of contractors who perform Federal dredging projects in the southeastern United States are very few in number, and the number has been steadily decreasing over the years. For these contractors, the dredging program of the Corps is the "only game in town." The Corps' procurement scheme will effectively take control of essentially all of the operations of an entire industry, and in doing so will remove from the

remaining contractors much of their individual abilities to manage their own businesses. By evaluating such factors as equipment availability and capability, in combination with the potential impact on other orders placed with an individual contractor, the government will be managing the contractors' resources, and will be effectively imposing decisions about who does what and when in a private industry. This will unduly restrict the revenue that a business can generate, and will unfairly limit the return on investment that a contractor can achieve. The potential for such unfettered and unwarranted governmental interference in the private operations of dredging contractors should not be condoned by the Court.

The proposed procurement will have a particularly harmful effect on the small business dredging community that is already small in number. These small business dredging contractors not only regularly compete for small business set-aside procurements, they are available as subcontractors to assist large business concerns. This new system will make it difficult for any small business dredging contractor who is not selected for a master MATOC contract to survive.

In some instances, these small businesses only possess one or two dredges and they do not have the ability to compete beyond the geographical limits of the South Atlantic Division. Inevitably, this will reduce the industrial base of small

business dredging companies, and will make it impossible for new or emerging small business dredging concerns to enter the marketplace. Since many small dredging companies have already made the considerable investment needed to participate in the Corps Of Engineers' dredging program, a restriction on competition by creating a "closed shop" of a few selected MATOC contractors will deny those who are not selected the opportunity to recoup or profit from their sizeable investments.

**D. The Denial And Limitation Of Statutorily Authorized Bid Protest And Dispute Procedures For An Entire Industry Within An Entire Geographic Region For A Period Of Up To Five Years Violates Applicable Procurement Laws And Regulations**

It is submitted that the Defendant's underlying and unexpressed reason for wanting to procure dredging services by making source selections on negotiated MATOC task orders is that awards of "negotiated" task orders are virtually "protest proof" and the agency can make subjective source selections with impunity. (See FAR 16.505(a)(9).

Since the Corps of Engineers is not permitted, by statute, to award a civil works dredging contract when the lowest price exceeds the government estimate by more than 25%, 33 U.S.C. §§ 622 and 624, EFARS 36.205(a), there are times when dredging contractors will appropriately protest the reasonableness of the government estimate in order to convince that Corps that there is a basis for the government to increase its estimate and thereby

place the lowest bid within the 25% limitation. This limitation is unique to civil works construction contracts, including dredging, and the denial of the right to protest will not only take away a right otherwise allowed by procurement law and regulation, FAR 33.1, but will have a uniquely harsh effect on the dredging industry in view of the controversy that occasionally surrounds the validity of the government estimate. The right to protest provides a valuable check on the government and encourages accuracy in the development of the government's pre-bid estimates. Since there will be no right to protest the reasonableness of the government estimate in the negotiated task order environment, the government will have the freedom to open up negotiations with the offerors with the goal of achieving lower prices without making any changes to the specifications and without the need to address the validity of the underlying government estimate.

### E. Criteria For Injunctive Relief

In order to obtain temporary injunctive relief, the Plaintiff must demonstrate:

(1) substantial probability that the Plaintiff will prevail on the merits;

(2) irreparable harm to the Plaintiff unless the injunction is granted;

(3) absence of substantial harm to other interested parties; and

(4) absence of harm to the public interest.

Virginia Petroleum Jobbers Ass'n v. Federal Power Commission, 259 F.2d 921 (D.C. Cir. 1959). However, the evidence presented for each of these criteria is balanced by the court on a sliding scale basis. A much stronger showing on one or more of the necessary factors lessens the amount of proof required for the remaining factors. Washington Metropolitan Area Transit Authority v. Holiday Inn, 559 F.2d 841 (D.C. Cir. 1972).

The Plaintiff will address the four above enumerated factors in light of the facts and applicable cases. For the reasons set forth below, Plaintiff submits that it is entitled to the relief sought.

**F. Likelihood of Success on The Merits**

In considering whether to grant interim injunctive relief pending a final decision on the merits, the Court of Federal Claims has consistently held that the "likelihood of success" is a flexible factor and does not require a certain "mathematical probability." Magellan Corp v. United States, 27 Fed. Cl. 446, (1993); TRW Environmental Safety Systems, Inc. v. United States, 16 Cl.Ct. 516 (1989). For purposes of a preliminary injunction, it is sufficient if the plaintiff can demonstrate either (1) "a combination of probable success on the merits and the possibility

of irreparable injury," or (2) "that serious questions are raised and the balance of hardships tips sharply in favor" of the plaintiff. Id. at 527. As demonstrated below, Plaintiff's request for preliminary injunctive relief meets these standards.

To prevail in a bid protest, a protester must show a significant, prejudicial error in the procurement process. See Statistica, Inc. v. Christopher, 102 F.3d 1577, 1581 (Fed.Cir.1996); Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed.Cir.1996). In the case at hand, the use of FAR, Part 15, Contracting by Negotiation procedures in contravention of applicable law and regulation means that there is a substantial probability that Plaintiff will prevail on the merits. The Competition in Contracting Act, as implemented by the cited procurement regulations, requires that sealed bidding be employed when the four specified conditions are met. Since those four conditions have been met in the instance case, the clear violation of procurement law and regulation makes it likely that the Plaintiff will prevail on the merits.

### G. Plaintiff Will Suffer Irreparable Harm If Relief Is Not Granted

When assessing irreparable injury, "[t]he relevant inquiry in weighing this factor is whether plaintiff has an adequate remedy in the absence of an injunction." Magellan Corp. v. United States, 27 Fed.Cl. 446, 447 (1993). The Plaintiff will suffer irreparable harm if an injunction is not granted because

of the potential loss of valuable business on this contract that it could otherwise obtain under the required sealed bidding procedures. This type of loss, deriving from a lost opportunity to compete in a fair competitive bidding process for a contract, has been found sufficient to prove irreparable harm. Overstreet Electric Co. v. U.S., 47 Fed.Cl. 728 (2000); United Int'l Investigative Servs., Inc. v. United States, 41 Fed.Cl. 312, 323 (1998).

The proposed negotiated MATOC contracts have a maximum value of $500,000,000 for each of the four groups and involves all of the dredging contracts to be solicited by the South Atlantic Division for a period of up to five years. Because the proposed solicitation unfairly and impermissibly alters the way that dredging contractors will be selected for awards, substituting competition on the basis of price with potentially subjective "best value" source selection based on illusory "technical" evaluation factors, the Plaintiff will suffer irreparable harm by being denied the opportunity to compete on a level playing field. When "best value" source selection is not based on technical evaluation factors that apply to the project work being solicited, the source selection will either be made on the basis of price, or highly subjective source selections will be made by assigning weight to the evaluation factors that are not true discriminators between qualified dredging contractors. The loss

of contract awards that the Plaintiff would have received under competitive sealed bidding procedures mandated by the law and applicable regulations will be unavoidable if an injunction is not issued and if the Defendant is permitted to proceed. If an injunction is not issued, Plaintiff will be denied the benefit of a legally valid procurement process as well as a fair opportunity to compete.

**H. <u>The Balance of Hardships Decidedly Favor Plaintiff</u>**

The Court must consider whether a preliminary injunction will substantially injure the other parties in the proceeding. As discussed above, if Plaintiff's request for injunctive relief is not granted, it will suffer the loss of an opportunity to fairly compete and to earn the profits associated with receiving contract awards. This outweighs any potential harm to the Corps of Engineers. As noted in the Court's General Order No. 38, the "Court's practice is to expedite protest cases to the greatest practical extent," and Plaintiff is prepared to agree to an expedited schedule for resolving this matter. See 28 U.S.C. §1491(b)(3) ("[i]n exercising jurisdiction under this subsection, the courts shall give due regard to . . . the need for expeditious resolution of the action"). Given the Court's practice to expedite bid protests, it is unlikely that the Corps will suffer irreparable injury during the pendency of this litigation.

## I. Injunctive Relief Will Serve The Public Interest

It is a well-settled principle that there is an overriding public interest in preserving the integrity of the federal procurement process by requiring the Government to follow its procurement statutes and regulations. See United Int'l Investigative Services, Inc., v. U.S., 41 Fed. Cl. 312,323 (1998) holding that the "public has a strong interest in preserving the integrity of the procurement process"; Isratex, 25 Cl.Ct. at 231 (public interest served by requiring the government to "fairly and honestly" consider bids). The public interest is always served when the procurement procedures required by law and regulation are followed. Issuance of an injunction will serve the public interest by protecting the integrity of the competitive procurement process.

## IV. CONCLUSION

Plaintiff respectfully submits that the requested relief is urgently needed to maintain the status quo until the Court reaches a decision on the merits. Based on the foregoing facts and analysis, Plaintiff respectfully requests the Court to grant its motion.

Respectfully submitted,

DATED: 9-28-07

Michael H. Payne, Esquire

Payne Hackenbracht & Sullivan
220 Commerce Dr., Suite 100
Ft. Washington, PA 19034
215-542-2777
215-542-2779(fax)
mhp@phslegal.com

Attorney of Record for
WEEKS MARINE, INC..

OF COUNSEL:

Joseph A. Hackenbracht, Esquire
Timothy A. Sullivan, Esquire
Payne Hackenbracht & Sullivan