No. 07-700C
(JUDGE WHEELER)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

---

WEEKS MARINE, INC.
Plaintiff,

v.

THE UNITED STATES,
Defendant

---

DEFENDANT'S MOTION TO DISMISS COUNTS III AND IV,
MOTION FOR JUDGMENT UPON COUNTS I AND II UPON THE
ADMINISTRATIVE RECORD, AND OPPOSITION TO
PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

---

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director

L. MISHA PREHEIM
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L St., NW
Washington, D.C. 20530
Tele: (202) 305-3087
Fax: (202) 305-1571

Dated: October 17, 2007

Attorneys for Defendant

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

QUESTIONS PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I. THE UNITED STATES IS ENTITLED TO JUDGMENT UPON COUNTS I AND II OF PLAINTIFF'S COMPLAINT UPON THE ADMINISTRATIVE RECORD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

A. Plaintiff Must Show A Violation Of A Statute Or Regulation And Prejudice. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

1. Rule 52.1 Standards. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

2. Standard Of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

B. Plaintiff Has Failed To Prove A Clear Violation Of A Regulation Or Procedure Or That The Corps Otherwise Acted In An Arbitrary And Capricious Manner. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

1. The Corps Has Not Violated 10 U.S.C. § 2304(a) Because The Award Will Not Be Made On The Basis of Price. . . . . . . . . . . . . 13

2. The Corps Has Not Violated Its Engineer Federal Acquisition Regulation Supplement Because Normal Selection Procedures Will Cause An Unacceptable Delay. . . . . . . . . . . . . . . . . . . . . . . . 17

C. Plaintiff Cannot Demonstrate Prejudice. . . . . . . . . . . . . . . . . . . . . . . . . 19

II. THE COURT SHOULD DISMISS COUNTS III AND IV FOR FAILURE TO STATE A CLAIM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

A. Plaintiff's Unfair Competition Claim Should Be Dismissed. . . . . . . . . . 20

B. Plaintiff's Claim That Bid Protest Procedures Will Be Limited Should Be Dismissed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

III. PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF. . . . . . . . . . . . . . . . 24

A. Standard For Obtaining Injunctive Relief. . . . . . . . . . . . . . . . . . . . . . . . . . 24

B. Success On The Merits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

C. Irreparable Harm And The Balance Of Harms. . . . . . . . . . . . . . . . . . . . . . 25

D. Public Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

A & D Fire Protection, Inc. v. United States,
72 Fed. Cl. 126, 131 (2006). . . . . . 11

Amoco Prod. Co. v. Vill. of Gambell, Alaska,
480 U.S. 531, 546 n. 12 (1987). . . . . . 24

Avtel Services, Inc. v. United States,
70 Fed. Cl. 173, 228 (2006). . . . . . 24

Banknote Corp. of Am., Inc. v. United States,
365 F.3d 1345 (Fed. Cir. 2004). . . . . . 11, 12

Bannum, Inc. v. United States,
404 F.3d 1346 (Fed. Cir. 2005). . . . . . 10, 11

CACI, Inc.-Federal v. United States,
719 F.2d 1567 (Fed. Cir. 1983). . . . . . 12

Emery Worldwide Airlines, Inc. v. United States,
264 F.3d 1071, 1086 (Fed. Cir. 2001). . . . . . 12, 19

EP Productions, Inc. v. United States,
63 Fed. Cl. 220 (2005). . . . . . 12, 24

Fire-Trol Holdings, LLC v. United States,
66 Fed. Cl. 36 (2005). . . . . . 13

Foundation Health Fed'l Servs. v. United States,
1993 WL 738426 (D.D.C. 1993). . . . . . 25

Hayes v. North State Law Enforcement Officers Ass'n,
10 F.3d 207, 217 (4th Cir.1993). . . . . . 28

Honeywell, Inc. v. United States,
870 F.2d 644 (Fed. Cir. 1989). . . . . . 12

Holley v. United States,
124 F.3d 1462, 1465 (Fed. Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed. Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

JDL Constr., Inc., v. United States,
14 Cl. Ct. 825, 829 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

KSEND v. United States,
69 Fed. Cl. 103 (2005), aff'd, 184 Fed. Appx. 956 (Fed. Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . 24

LABAT-Anderson, Inc. v. United States,
65 Fed. Cl. 570, 581 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

M. Steinthal & Co. v. Seamans,
455 F.2d 1289 (D.C. Cir. 1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Minor Metals, Inc. v. United States,
38 Fed. Cl. 379, 381-82 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.,
463 U.S. 29 (1983).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

OAO Corp. v. U.S.,
49 Fed.Cl. 478, 480 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Overstreet Elec. Co. V. U.S.,
47 Fed. Cl. 728, 744 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

PGBA, LLC v. United States,
389 F.3d 1219 (Fed. Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Tech Systems, Inc. v. United States,
50 Fed. Cl. 216 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United International Investigative Services, Inc. v. U.S.,
41 Fed. Cl. 312, 323 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 28

Vanguard Sec. Inc. v. United States,
20 Cl.Ct. 90, 113 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Wisconsin Gas Co. v. Fed. Energy Regulatory Comm'n,
758 F.2d 669, 674 (D.C. Cir. 1985). . . . . . . . . . 25

Zenith Radio Corp. v. United States,
710 F.2d 806, 810 (Fed. Cir. 1983). . . . . . . . . . 25

**STATUTES AND REGULATIONS**

10 U.S.C § 2304. . . . . . . . . . 2, 13-16, 23

28 U.S.C. § 1491(b)(3). . . . . . . . . . 11, 13, 24

FAR 6.401. . . . . . . . . . 2, 6

FAR 9.104.1. . . . . . . . . . 5, 8, 15

FAR 15.305(a)(2)(i). . . . . . . . . . 15

FAR 16.505(a)(6). . . . . . . . . . 23

FAR 16.505(b)(5). . . . . . . . . . 23

EFARS 16.501. . . . . . . . . . 17

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| WEEKS MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-700C |
| | ) | (Judge Wheeler) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MOTION TO DISMISS COUNTS III AND IV, MOTION FOR JUDGMENT UPON COUNTS I AND II UPON THE ADMINISTRATIVE RECORD, AND OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Pursuant to Rules 12(b)(6) and 52.1(b) of the United States Court of Federal Claims ("RCFC") and the Court's order of October 10, 2007, defendant, the United States, respectfully requests that the Court grant its motion for judgment upon Counts I and II of plaintiff's complaint upon the administrative record and motion to dismiss Counts III and IV of that complaint. As the administrative record ("AR") in this case reveals, the decision of the U.S. Army Corps of Engineers ("Corps") to utilize solicitation by negotiation of multiple award task order contracts for the performance of dredging contracts was not arbitrary and capricious and did not violate any statute or regulation. Plaintiff also cannot demonstrate that it has suffered prejudice as a result of any of the alleged statutory or regulatory violations. Moreover, plaintiff has failed to plead the required elements of two of its four claims. Those claims should be dismissed.

## QUESTIONS PRESENTED

1. Whether the Corps is entitled to judgment upon the administrative record because it has not violated any of its regulations or procedures.

2. Whether plaintiff has demonstrated that it will suffer prejudice as a result of the alleged statutory or regulatory violations.

3. Whether plaintiff has plead causes of action for two of its claims.

4. Whether plaintiff's request for permanent injunctive relief should be denied.

## STATEMENT OF THE CASE

Plaintiff, Weeks Marine, Inc. ("Weeks"), seeks declaratory and injunctive relief relating to the procedures established for awarding contracts for maintenance dredging and shore protection in the South Atlantic Division of the Corps. Those procedures provide for a negotiated solicitation under Part 15 of the Federal Acquisition Regulations ("FAR") for required indefinite delivery indefinite quantity ("IDIQ") multiple award task order contracts ("MATOC"). Weeks filed suit in this Court, seeking (1) a declaration that the "solicitation can only proceed on the basis of sealed bidding as required by FAR 6.401 and FAR 36.103;" (2) an injunction requiring the Corps to proceed with the procurement using sealed bid procedures; and (3) such other relief as the Court deems just and proper. Compl. at 17, ¶¶ 1-3.

Weeks' case is focused on two claims. First, Weeks contends that, under 10 U.S.C. §2304(a) and paragraph 6.401 of the FAR, the Corps is required to use sealed bidding. In fact, 10 U.S.C. § 2304(a) and paragraph 6.401 of the FAR provide that the Government must use sealed bidding only if price is the basis of the award. Here, price is not the sole basis of the award. The award is also based on other factors, notably past performance.

Second, Weeks argues that the Corps' Engineer Federal Acquisition Regulation Supplement ("EFARS") contains five situations under which Indefinite Delivery Contracts ("IDCs") may be used, none of which are present here. Weeks is incorrect. The time required to procure the required services through normal selection procedures will cause an unacceptable delay. As a result, the Corps is entitled to use IDCs. In addition, Weeks cannot demonstrate that it suffered prejudice as a result of the two alleged statutory or regulatory violations. For this reason as well, Weeks' claims should be rejected.

Weeks' third claim is that the procedures established by the Corps are anticompetitive in violation of "applicable law and regulation." However, Weeks never cites any law or regulation that the Corps' actions allegedly violate and did not include this claim in its complaint. Moreover, even if Weeks had adequately plead this claim (whatever it may be), the administrative record is clear that the new procedures will provide just as much competition, if not more, than the old.

Fourth, Weeks contends that the denial and limitation of statutorily authorized bid protest and dispute procedures violates unspecified procurement laws and regulations. Again, Weeks did not include this claim in its complaint and does not set forth which laws and regulations it believes have been violated. Moreover, there will be adequate opportunity for Weeks to protest under the new system. Further, under Weeks' view, all contracts awarded under procedures akin to those in the solicitation at issue would run afoul of these unspecified statutes and regulations. This proposition has no legal support.

At bottom, this case concerns a contractor that protests against procedures which are not only permissible, but will allow the Government to operate more efficiently and effectively.

Weeks' primary concern appears to be that the Corps will consider factors other than price, such as past performance and equipment availability, when awarding contracts. Weeks neglects to consider the right of the Corps to modify its contracting procedures, fails to take into account the considerable deference afforded agency decisions, and contains numerous contradictions that undermine any argument that the Corps violated its procedures or regulations. Under Weeks' view, the Corps is locked into a sealed bidding system that, regardless of the cost or merit, must remain in place forever. That view runs contrary to common sense and has no legal basis.

## STATEMENT OF FACTS

This case concerns the procedures for awarding contracts for maintenance dredging and shore protection in the South Atlantic Division of the Corps. Dredging projects involve new work and/or maintenance dredging. New work occurs when an area is dredged that has never been dredged previously, such as a new channel or the widening of an existing channel. Maintenance dredging involves removal of material which has shoaled since the previous dredging event and which causes limitations in vessel movements in navigable waterways. AR8. Many of the harbors and waterways are used by both commercial vessels and pleasure craft. AR8. Several areas, such as Kings Bay Navy Submarine Base and the Marine Corps Terminal at Blount Island, provide access for military vessels. AR8. Shore protection projects serve to safeguard private and commercial properties as well as government-owned lands from erosion that occurs from wave action, hurricanes, and other storms. AR8.

There are significant barriers to entry into the dredging industry. High start-up costs associated with acquiring plant and equipment, insurance, and availability of experienced labor are factors that serve to limit the ability of new entrants into the business. AR12. As a result,

availability and capability of businesses to handle the increasing workload has become very limited throughout the United States. AR12.

Previously, contracts for dredging and shore protection were awarded using a sealed bidding system. Under this system, contractors submitted sealed bids to the Corps. So long as the bidder was responsive and met certain minimum responsibility requirements, such as "satisfactory" past performance, price was the only consideration in awarding contracts. AR32; FAR 9.104.1.

The sealed bidding system had a number of problems. In the past, there were predictable cycles for dredging. AR9. In recent years, this has changed. AR9. For one, the window in which dredging can occur is increasingly limited, largely because of environmental reasons (such as turtle nesting season). AR9. In fact, environmental windows affect approximately 80 percent of dredging operations. AR27. Further, in recent years, there have been a number of unplanned dredging events. AR9-10. Most recently, shoaling was so severe that emergency contracts were awarded to maintain channel depths for military and commercial vessels. AR10. Many of the emergency contracts were solicited using less than full and open competition under FAR 6.302-2, Unusual and Compelling Urgency. AR10. The Corps anticipates that such events will continue. AR10.

In 2004, the shoreline along the South Atlantic Coast was devastated by hurricanes. AR10. As a result, Congress passed Public Law 108-324, which provided funding for over $98 million in shore protection contracts. AR10. The contracts were awarded on an emergency basis, which severely limited the opportunity for competition. AR10.

In addition, under the sealed bidding system, all five Districts within the South Atlantic

Division of the Corps were conducting their dredging operations independently. AR43, 65. As a result, Districts often had to compete with each other for the same contractors during the same limited environmental window. AR 33. In certain instances, Districts had limited choices of contractors, and the results were less than satisfactory. AR53. For example, the lowest bidder on a project may be a dredger that is already performing work in another area under the same environmental time constraints. The problem arises when there are overruns, significant change orders, unexpected shoaling, or bad weather that keeps the contractor on the first job longer than anticipated, jeopardizing the ability of the dredger to execute the work within the required window for the District that awarded the second contract. With sealed bidding, the contracting officer does not have the same flexibility to consider availability of equipment as a factor in awarding a contract, but, in negotiated procurements, logistical problems may be addressed so that all work may be completed quickly. FAR 6.401.

In addition, because the previous system focused solely on price, the Corps had limited flexibility to consider other factors, such as past performance, when awarding contracts. AR53. Again, at times this resulted in work that was less than exemplary. AR53.

The Corps determined that "[i]t has become increasingly difficult in today's operating environment to obtain viable bids from responsible contractors capable of meeting performance requirements and time constraints." AR9. "Traditional delivery strategies are no longer timely or responsive or flexible enough to meet current needs given the volatile operating environment. Therefore, improved acquisition strategies must be acquired and adopted so that projects can be delivered faster and cost effectively, while still appropriately balancing costs, schedule, and performance." AR15. As the Corps explains in its Acquisition Plan, insuring that dredging

projects move forward quickly and efficiently is critical. "Not providing timely execution of maintenance dredging in the vicinity of military installations, such as Kings Bay, Mayport, and Charleston Navy Bases and the Marine Corps Terminal at Blount Island will have devastating impacts on the Army, Navy, and Marine Corps' ability to provide national security as well as meet the current global operational requirements. Ultimately, the ability to respond to the global war on terrorism would be negatively impacted." AR17.

In light of these concerns, the Corps considered the costs and benefits of changing the contracting process utilized for dredging in the South Atlantic Division and weighed comments from the industry. The Corps considered three alternatives: (1) maintain the status quo; (2) award single IDIQ contracts; or (3) award IDIQ MATOC contracts. AR31-32. The Corps determined that the most effective option was the MATOC. AR32. This procurement method affords the benefits of a continuing competitive environment throughout the duration of the contract while minimizing the delays of conducting separate procurements for each requirement. AR32. It also allows the contracting officer the flexibility to award task orders based on factors other than price and permits negotiations as necessary to ensure all potential offerors clearly understand the solicitation. AR32. Thus, a Request for Proposals was issued for a negotiated procurement under the procedures set forth in FAR Part 15 for required IDIQ MATOCs ("Solicitation"). AR33.

Under the Solicitation, the Corps will award at least eight contracts in four MATOC groups. AR29, 93. Awards will be made on the basis of four evaluation factors: Technical Merit, Price, Past Performance, and Utilization of Small Business Concerns. AR148-52. After the initial MATOC awards are made, task orders will be issued within each of the four groups for

additional work. AR93-95. Once a contractor is qualified for a MATOC group, it may bid on any future task order within that group. AR94-95. Best Value Trade Off procedures may be used to insure that the Corps receives the best overall value. AR94-95. The Solicitation makes clear that factors other than price are significantly important to the evaluation, as follows:

> After eliminating any proposal that does not meet standards of acceptability for the Technical Merit factor, the Source Selection Authority will use a trade-off process (considering past performance, utilization of small business concerns, and price) to determine which offer(s) represent the best value to the Government. This process allows the Source Selection Authority to consider making award to other than the lowest priced offer or other than the least risky (from a past performance and utilization of small concerns point of view) offer. **Past performance is considered significantly more important than price. Utilization of Small Business Concerns is considered significantly less important than Past Performance and Price. All evaluation factors, when combined, are significantly more important than price.**

AR148 (emphasis in original).

Under this process, the Corps will place the contractor into one of six "risk assessment" categories, ranging from "Very Low Risk" to "Very High Risk." AR154. The risk assessment rating is based on two factors: past performance and relevance. AR153. With respect to past performance, "the Government will evaluate timely completion of work; quality of work; customer satisfaction; cost controls for additional work; and safety. However, the Government reserves the right to evaluate other areas and reserves the right to determine, on a case by case basis, how much emphasis to place on any given area." AR149-152. Moreover, the ratings system for past performance is not simply satisfactory or unsatisfactory as under FAR 9.104.1. Rather, the ratings system contains six categories: Outstanding, Above Average, Satisfactory, None, Marginal, and Unsatisfactory. AR153. With respect to relevance, the contractor's past

work is placed into one of three categories: Highly Relevant, Moderately Relevant, and Slightly Relevant. AR154. Relevance and past performance are then combined to form the Risk Assessment factor. AR154.

The Solicitation also considers the contractor's utilization of small business concerns. Under this factor, the contractor will receive a rating from Unsatisfactory to Outstanding. AR154-55. In addition, to address the concerns of small businesses, the Corps has grouped the projects that have historically been set aside for small businesses and has solicited these projects under one grouping, providing for the maximum practicable number of awards to small businesses. AR11, 51, 149. As a result, the new bidding system will provide the small business community the same level of opportunity to compete as in the past. AR12. Under the new approach, opportunities for more than one project at a time are being provided well in advance so that better projections and contractor arrangements can be made. AR12. In addition, the contracting officer has the right to refresh the pool of contractors on an annual basis to add additional contractors that were not previously awarded a contract. AR93.

The procedures established by the Corps will address many of the problems with the old bidding system. The Solicitation will allow the Corps to take into account factors other than simply price. In addition, once the MATOC contracts have been awarded, the Corps has the flexibility to identify the most significant work that needs to be performed and then prioritize that work by issuing task orders. AR17, 28. The implementation of the MATOCs should also eliminate the need to limit competition in the case of a natural disaster or other emergency. AR10. The MATOC system will also enable the Corps to reduce the procurement administrative lead time. AR9. This is significant because the window for performing dredging is often limited

because of environmental concerns, as well as weather. AR9, 12. Further, because of the national security implications of insuring that dredging work proceeds quickly, reducing the procurement cycle is critical. AR17. Finally, the revised system will allow the Corps to better address the problem of sporadic funding streams, which adds an additional time constraint to many projects. AR12, 17. "The increased use of Congressional Inserts as well as the delays in getting both military and civil works appropriation and authorization bills signed cause significant schedule impacts. . . . This will be mitigated by the development of IDIQs which allow for a significant reduction in acquisition time." AR17.

Unhappy with the Solicitation, Weeks filed this suit, claiming that the Solicitation violates two regulations, is anti-competitive, and will limit Weeks' ability to protest future decisions.

## ARGUMENT

### I. THE UNITED STATES IS ENTITLED TO JUDGMENT UPON COUNTS I AND II OF PLAINTIFF'S COMPLAINT UPON THE ADMINISTRATIVE RECORD

#### A. Plaintiff Must Show A Violation Of A Statute Or Regulation And Prejudice

##### 1. Rule 52.1 Standards

Pursuant to RCFC 52.1,[1] this Court reviews the agency's procurement decision to determine whether it is supported by the already-existing administrative record. The standards applicable to a motion for judgment upon the administrative record differ from those applied in the context of a Rule 56 motion for summary judgment. Bannum, Inc. v. United States, 404 F.3d

---

[1] On June 20, 2006, following the Federal Circuit's decision in Bannum, Inc. v. United States, 404 F.3d 1346 (Fed. Cir. 2005), RCFC 52.1 replaced RCFC 56.1 to avoid any confusion with the standards applicable to summary judgment.

1346, 1355-56 (Fed. Cir. 2005); Tech Systems, Inc. v. United States, 50 Fed. Cl. 216, 222 (2001) (explaining basis for judgment based upon the administrative record). Unlike a Rule 56 motion, "proceeding under RCFC [52.1] merely restricts the evidence to the agency record. . . ." Bannum, 404 F.3d at 1356. Thus, under RCFC 52.1, the Court determines whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record. A & D Fire Protection, Inc. v. United States, 72 Fed. Cl. 126, 131 (2006) (citing Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005)). The Court must make factual findings where necessary. Id.

**2. Standard Of Review**

This Court's review of agency procurement decisions is quite limited. The Court possesses jurisdiction to entertain both pre-award and post-award bid protests under the Tucker Act, 28 U.S.C. § 1491(b), as amended by the Administrative Dispute Resolution Act of 1996 ("ADRA"). Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1350 (Fed. Cir. 2004). Under the ADRA, the Court applies a standard of review adopted from the Administrative Procedure Act, codified at 5 U.S.C. § 706. Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001). This standard of review provides that a reviewing court shall set aside an agency action only if it is "arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law." Id. at 1332 n.5.

In the bid protest context, this Court should enjoin a procurement decision only when "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." Impresa Construzioni, 238 F.3d at 1332. When a bidder's challenge implicates the first ground, the protestor "bears a heavy burden" of showing

that the agency's decision had no rational basis. Id. at 1333. This heavy burden stems from the wide discretion afforded to contracting officers "upon a broad range of issues confronting them in the procurement process." Id. at 1332. Indeed, this Court will "interfere with the government procurement process 'only in extremely limited circumstances.'" EP Productions, Inc. v. United States, 63 Fed. Cl. 220, 223 (2005) (quoting CACI, Inc.-Federal v. United States, 719 F.2d 1567, 1581 (Fed. Cir. 1983)).

When a challenge is brought on the second ground – a violation of regulation or procedure - the plaintiff must show a clear and prejudicial violation of applicable statutes or regulations. Banknote, 365 F.3d at 1351 (internal quotations and citations omitted) (quoting Impresa, 238 F.3d at 1332-33). To show prejudice, plaintiff must show that there was a "substantial chance" that it would have been awarded the contract but for agency errors in the bid process. Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1086 (Fed. Cir. 2001).

An agency's decision could be found irrational if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). In evaluating an agency's decision, the Court may not substitute its judgment for that of the agency. "If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971)). In

particular, when the Court considers "a purely factual question within an area of competence of an administrative agency created by Congress . . . the Court will recognize the relevant agency's technical expertise and defer to its analysis unless it is without substantial basis in fact." Fire-Trol Holdings, LLC v. United States, 66 Fed. Cl. 36, 40 (2005) (internal quotes and citations omitted). Nonetheless, an agency's decision is not shielded from a "thorough, probing, in-depth review." Id.

Finally, where national defense and security are involved, the Court must give even greater deference to the agency. See 28 U.S.C. § 1491(b)(3) ("In exercising jurisdiction under this subsection, the courts shall give due regard to the interests of national defense and national security and the need for expeditious resolution of the action.").

**B. Plaintiff Has Failed To Prove A Clear Violation Of A Regulation Or Procedure Or That The Corps Otherwise Acted In An Arbitrary And Capricious Manner**

**1. The Corps Has Not Violated 10 U.S.C. § 2304(a) Because The Award Will Not Be Made On The Basis Of Price**

In its complaint, Weeks asserts two violations of statutes or regulations. First, Weeks contends that 10 U.S.C. § 2304(a) requires that the Corps solicit sealed bids. That section provides:

> In determining the competitive procedure appropriate under the circumstances, the head of an agency –
>
> A. shall solicit sealed bids if -
>
> i. time permits the solicitation, submission, and evaluation of sealed bids;
>
> ii. the award will be made on the basis of price and other price-related factors;

> iii. it is not necessary to conduct discussions with the responding sources about their bids; and
>
> iv. there is reasonable expectation of receiving more than one sealed bid; and
>
> B. shall request competitive proposals if sealed bids are not appropriate under clause (A).

10 U.S.C. § 2304(a).

Contrary to Weeks' contention, sealed bids are not required here because awards will be made on the basis of factors other than price, the most important of which is past performance. The Solicitation makes clear that "past performance is considered significantly more important than price" and that "all evaluation factors, when combined, are significantly more important than price." AR148.

Weeks asserts that, notwithstanding the express language of the Solicitation, the Solicitation is, in fact, based solely on price. Under Weeks' view, the evaluation factors are nothing more than the standard responsibility determination that is made under sealed bidding. As a result, claims Weeks, the Corps does not have a rational basis for not continuing to employ sealed bidding.

First, Weeks cannot have it both ways. It claims that the Solicitation is really based only upon price but it also states that it is concerned that the new system will allow the Corps to consider factors other than price. Plaintiff's Memorandum in Support of Motion for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction and Declaratory Judgment ("Pl. TRO Mem.") at 21 (plaintiff "is concerned that the overly-subjective criteria proposed by the Defendant's evaluation scheme could result in the unfair rejection of awardable, lower priced,

proposals.”). If, as Weeks acknowledges, factors in addition to price are considered under the Solicitation, Weeks cannot demonstrate a statutory violation under 10 U.S.C. § 2304(a).

Weeks also mischaracterizes both the old system and the new one. Under the previous system, price and only price was determinative of award, so long as the bidder met certain minimum requirements set forth in FAR 9.104.1. Weeks incorrectly asserts that these minimum requirements are the same as the factors considered under the Solicitation.

Under sealed bidding, FAR 9.104.1 requires that the contracting officer determine whether the contractor has “a satisfactory performance record.” One purpose of moving to a RFP system is to provide the agency flexibility to weigh the past performance factor (among others), rather than simply to review a checklist to determine whether a given factor is present. A negotiated procurement allows the contracting officer to consider the different levels of past performance and conduct a comparative assessment that, as stated in FAR 15.305(a)(2)(i), is “separate from the determination required under Subpart 9.1.”

Indeed, the ratings system for past performance entails significantly more than simply assessing whether a contractor’s past work is satisfactory or unsatisfactory under FAR 9.104.1. Rather, the ratings system for past performance contains six categories: Outstanding, Above Average, Satisfactory, None, Marginal, and Unsatisfactory. AR153. With respect to past performance, “the Government will evaluate timely completion of work; quality of work; customer satisfaction; cost controls for additional work; and safety. However, the Government reserves the right to evaluate other areas and reserves the right to determine, on a case by case basis, how much emphasis to place on any given area.” AR149-152. In addition, the Corps will

also consider the relevance of the contractors past work and assign that work to one of three categories: Highly Relevant, Moderately Relevant, and Slightly Relevant. AR154. Relevance and past performance are then combined to form the Risk Assessment factor. AR154. For example, a contractor that receives an outstanding rating for highly relevant past performance will be given a "Very Low Risk" rating. AR154.

Among other things, this system also addresses the problem under the old system where a contractor could have a "satisfactory" performance record, but still not have the level of performance record considered by the Corps to be necessary for a given job. In other words, certain jobs, such as those in environmentally sensitive areas, may require more than simply satisfactory past performance; the new system provides the Corps the flexibility to make this assessment. Under sealed bidding, the low bidder with satisfactory past performance that is only slightly relevant must be awarded a contract over the next lowest bidder that may be only a few dollars higher but with highly relevant past experience. In such a case, the Government might initially save a few dollars, but the performance risk and possibly the ultimate cost would be greatly increased. Under negotiated procurement procedures, the contracting officer has the discretion to make a rational business decision and award to the less risky contractor.

The Solicitation also allows the Corps thoroughly to consider utilization of small business concerns. Under this factor, the contractor will receive a rating from Unsatisfactory to Outstanding. AR154-55.

For all these reasons, it is clear that the awards will not be made on the basis of price. As a result, the Corps has not violated 10 U.S.C. § 2304(a).

### 2. The Corps Has Not Violated Its Engineer Federal Acquisition Regulation Supplement Because Normal Selection Procedures Will Cause An Unacceptable Delay

Weeks' second argument is that indefinite delivery contracts can only be used if one or more of five conditions is present, and none are present here. The Corps' Engineer Federal Acquisition Regulation Supplement states:

> IDC [indefinite delivery contracts] may be used *only* if one or more of the following conditions applies -
>
> 1. The cost to procure the required services or supplies individually through normal selection procedures is uneconomical compared to the cost of the services or supplies themselves;
>
> 2. The time required to procure the required services or supplies individually through normal selection procedures will cause an unacceptable delay in fulfilling the requirements;
>
> 3. Technical continuity among related requirements is essential;
>
> 4. Significant cost savings in contract price and/or contract administration will accrue by having a single contractor perform several similar requirements; or
>
> 5. Management of more than one contractor on an installation present unacceptable administration problems in such areas as coordination and movement of work forces and equipment, separation and acceptance of contractor responsibility, and verification of performance and progress.

EFARS 16.501, S-103(a) (emphasis in original).

The Corps has determined that the time required to procure the required services through normal selection procedures will cause an unacceptable delay in fulfilling the requirements. The previous procurement system resulted in an unacceptable delay for all the reasons set forth above (for example, the necessity of dealing with unplanned dredging events; limited environmental windows; competition among Districts for contractors; and the difficulty of finding contractors to

quickly complete required work). Indeed, one of the primary purposes of revising the procedures was to "[r]educe the acquisition cycle time to allow more time for actual performance." AR9. It is also clear that, "[w]ithout a change in current acquisition processes, severe economic and financial impacts could occur as [a] result of failure to keep ports and harbors operational." AR15. Not providing timely execution of certain maintenance dredging projects "will have devastating impacts on the Army, Navy and Marine Corps' ability to provide national security as well as meet the current global operation requirements. Ultimately, the ability to respond to the global war on terrorism would be negatively impacted." AR17.

Thus, there was clearly an unacceptable delay under the previous system. As a result, the Corps developed the MATOC procedures.[2] The Solicitation will reduce the procurement cycle by approximately 30 days per project. AR9.[3] This is a significant reduction given (i) the limited environmental window in which many projects must operate; (ii) the fact that "hurricanes and other storm events increase shoaling in many harbors and channels virtually overnight and the inability of USACE to respond quickly presents very real economic hardships;" and (iii) the

---

[2] The reduced delay is a result of a variety of factors, including the fact that contracts will be grouped around equipment types, contractor capabilities, and business size which will allow for shorter procurement duration (AR15); the delay often occasioned by Districts competing with each other will be eliminated through prioritization of task orders (AR8, 25); and lead time will be reduced because of the elimination of notices required under the previous process (AR18).

[3] This reduction may be as large as 45 days. AR389-90; see AR53 ("The use of MATOCs will streamline the procurement process by providing a ready pool of contractors with proven records of past performance and will shorten the procurement lead-time by eliminating the advance notice period, the need for issuing detailed IFBs, and the need for time consuming past performance confirmations normally required for individual procurements. It is estimated that this contracting mechanism will save as much as 45 days in the procurement cycle of each project. Having contracts in place allows the best use of valuable dredging time particularly during environmental windows.")

national security implications of even a short delay. AR9, 17, 18.

As an additional benefit, the Corps will recognize significant cost savings in contract administration under the Solicitation by utilizing IDCs. Under the previous procedures, separate dredging contracts were awarded in the South Atlantic Division in the past two years at a procurement labor cost of approximately $2,183,949. AR18. Under the MATOC approach, the Corps expects to have a total procurement cost of $738,026. AR18. Thus, the Corps expects to save $1,445,923 under the MATOC procedures - a 66 percent savings. AR18.

### C. Plaintiff Cannot Demonstrate Prejudice

When a protestor asserts a violation of a regulation or procedure, it must show that the violation is "clear and prejudicial." Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1086 (Fed. Cir. 2001). To show prejudice, plaintiff must show that there was a "substantial chance" that it would have been awarded the contract but for agency errors in the bid process. Id. Logic dictates that, in a pre-award case, where a plaintiff acknowledges that it expects to win an award, it cannot claim to have been prejudiced by the purported regulatory or statutory violation. Weeks, one of the largest dredging contractors in the United States, admits that it "does not fear that it will fail to be selected as a master MATOC contractor." Pl. TRO Mem. at 21. This admission should preclude Weeks from claiming any prejudice as a result of the MATOC procedures. Further, it would be bizarre indeed for a plaintiff to claim prejudice based upon a requirement that it actually face appropriate competition in accordance with the purposes of the Competition in Contracting Act ("CICA").

Similarly, with respect to the award of task orders, Weeks merely speculates that "the application of the overly-subjective criteria proposed by the Defendant's evaluation scheme

could result in the unfair rejection of awardable, lower priced proposals." (Emphasis added). Weeks is not even claiming that it could lose an award. Rather, Weeks seems to be speculating that some unidentified dredging contractor with a lower priced proposal may lose an award under the Solicitation. Moreover, Weeks' use of the word "could" makes clear that Weeks does not believe that there is a substantial chance it will lose an award. Thus, Weeks cannot demonstrate that there is a substantial chance it will lose task orders that it would otherwise have won absent the alleged regulatory or statutory violations.

Because Weeks cannot demonstrate prejudice as a result of the alleged statutory or regulation violations, its claims should be rejected.

## II. THE COURT SHOULD DISMISS COUNTS III AND IV FOR FAILURE TO STATE A CLAIM

### A. Plaintiff's Unfair Competition Claim Should Be Dismissed

In its memorandum of points and authorities in support of its motion for temporary restraining order, preliminary injunction, permanent injunction, and declaratory relief, Weeks raises two claims that do not appear in its complaint. First, Weeks claims that the Solicitation impermissibly limits competition throughout an entire industry in violation of applicable law and regulation. This claim does not appear in Weeks' complaint, other than a conclusory one-paragraph statement that "[t]he proposed MATOC procurement will limit competition for dredging projects to be performed within the jurisdiction of the South Atlantic Division to a small group of selected dredging contractors for a period of up to five years." Compl. ¶ 14. This bald assertion is not only inaccurate, but also falls far short of the pleading requirements for asserting a claim. Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir. 1997) (complaint

"must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed."). Among other things, Weeks does not cite to any statute or regulation that has been violated. For this reason alone, Weeks' claim should be dismissed.

For the same reasons set forth above, Weeks also cannot demonstrate any prejudice as a result of the unspecified anticompetitive actions on the part of the Corps. In addition, much of Weeks' argument is focused on the effect of the Solicitation on small business. While its concern for small business is laudable, the fact that Weeks is not a small business also means that it cannot demonstrate that it will suffer prejudice by any purported statutory or regulatory violation.

In addition, as explained above, the Solicitation will benefit small business because it: (i) considers the contractor's utilization of small business concerns (AR154-55); (ii) groups the projects that have historically been set aside for small businesses, thereby providing for the maximum practicable number of awards to small businesses (AR11, 51, 149); (iii) provides opportunities for more than one project at a time well in advance so that better projections and contractor arrangements can be made (AR12); and (iv) gives the contracting officer the right to refresh the pool of contractors on an annual basis to add additional contractors that were not previously awarded a contract. AR93. Under the MATOC, not only can small businesses compete for the task orders set aside for the small business group, but they can also submit proposals for work in the other groups if they have the capability of performing the work. AR93. Thus, any contention that the Solicitation harms small businesses is unfounded. For this reason as well, Weeks' claim should be dismissed.

Moreover, in addition to providing expanded opportunities for small businesses, the new procedures will not stifle competition but, rather, will enhance it. This is true for at least two reasons. First, the MATOC procedures should eliminate the need to limit competition in the case of natural disaster or other emergencies. AR10. Second, the Corps confirmed that there is sufficient interest in all proposed contract opportunities to insure adequate competition. AR21.

Finally, it is not the contracting process that limits competition in the dredging industry. The real limitations to entry into this market are factors such as the high cost of dredging equipment, insurance, and the availability of experienced labor. AR12. Even if the Solicitation were somehow anti-competitive (which it is not), its effect on competition would be negligible when compared with these existing barriers to competition. For all these reasons, Weeks' anti-competition claim should be rejected.

**B. Plaintiff's Claim That Bid Protest Procedures Will Be Limited Should Be Dismissed**

Weeks also asserts that the denial and limitation of statutorily authorized bid protest and dispute procedures violates applicable procurement laws and regulations. This claim is not contained in the complaint and should, therefore, be dismissed. Moreover, even if it were in the complaint, Weeks has not cited any statutes or regulations that have been violated. Weeks merely references unspecified "applicable procurement laws and regulations." Pl. TRO Mem. at 24. Thus, to the extent that Weeks is attempting to assert such a claim, it should be dismissed for this reason as well.

Even if Weeks were asserting such a claim, this claim would fail. All rights and remedies afforded a contractor under Federal contracts remain in effect under the Solicitation. The only

limitation that Weeks identifies is the limit placed on the contractor's ability to protest in connection with the issuance of task orders under FAR 16.505(a)(6). These limits are not absolute. Rather, a contractor is permitted to protest the issuance of a task order if "the order increases the scope, period or maximum value of the contract." FAR 16.505(a)(6). Further, complaints concerning task orders are reviewable by the agency ombudsman. FAR 16.505(b)(5) ("Each head of an agency who awards multiple task or delivery order contracts pursuant to section 2304a(d)(1)(B) or 2304b(e) of this title shall appoint or designate a task and delivery order ombudsman who shall be responsible for reviewing complaints from the contractors on such contracts and ensuring that all of the contractors are afforded a fair opportunity to be considered for task or delivery orders when required under subsection (b). The task and delivery order ombudsman shall be a senior agency official who is independent of the contracting officer for the contracts and may be the agency's competition advocate."). In addition, the contractor has the right to protest the original decision to award the MATOC contract.

Further, the fact that task orders cannot be protested is not a basis for finding an agency decision to be arbitrary and capricious or in violation of a statute or regulation. If it were, all such IDIQ contracts would be precluded. In fact, task orders are common throughout the Government. Weeks seems to believe that dredging should be excluded from task order contracting but it has not articulated any valid reason why this should be the case. There is simply no basis for finding that the Solicitation is unlawful or otherwise arbitrary and capricious.

## III. PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF

### A. Standard For Obtaining Injunctive Relief

In deciding whether a permanent injunction should issue, the Court considers "(1) whether, as it must, the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief." PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing Amoco Prod. Co. v. Vill. of Gambell, Alaska, 480 U.S. 531, 546 n. 12 (1987)).

Because "injunctive relief is so drastic in nature, a plaintiff must demonstrate that its right to such relief is clear." EP Productions, Inc. v. United States, 63 Fed. Cl. 220, 224 (2005). That is, plaintiff must demonstrate its right to injunctive relief by clear and convincing evidence. KSEND v. United States, 69 Fed. Cl. 103, 112 (2005), aff'd, 184 Fed. Appx. 956 (Fed. Cir. 2006). Further, the Tucker Act directs this Court to "give due regard to the interests of national defense and national security and the need for expeditious resolution of the action" when deciding bid protests. 28 U.S.C. § 1491(b)(3). A solicitation that "addresses military preparedness implicates national security, which, thus, becomes a factor the court must consider in the balance of harms." Avtel Services, Inc. v. United States, 70 Fed. Cl. 173, 228 (2006).

### B. Success On The Merits

As demonstrated above, Weeks has not shown that the Corps' actions were arbitrary, capricious, or otherwise not in accordance with applicable statutes and regulations. Accordingly, Weeks is not entitled to an injunction because it cannot succeed on the merits.

### C. Irreparable Harm and Balance of Harms

Weeks cannot demonstrate that it will suffer irreparable harm. Weeks claims that the irreparable harm it will suffer is "the potential loss of valuable business on this contract that it could otherwise obtain under the required sealed bidding procedures." However, this collateral effect of the Corps' compliance with the purposes of CICA does not amount to irreparable harm:

> "[E]conomic loss does not, in and of itself, constitute irreparable harm." . . . Only economic loss that threatens the survival of a movant's business constitutes irreparable harm. . . . The plaintiffs do not claim that they will be destroyed if they do not obtain an injunction. Rather, they merely claim that they risk losing a valuable contract and some of their employees. This is insufficient.

Foundation Health Fed'l Servs. v. United States, No. 93-1717, 1993 WL 738426, at *3 (D.D.C. 1993) (quoting Wisconsin Gas Co. v. Fed. Energy Regulatory Comm'n, 758 F.2d 669, 674 (D.C. Cir. 1985)) (additional citation omitted); see also Minor Metals, Inc. v. United States, 38 Fed. Cl. 379, 381-82 (1997) ("However, economic harm, without more, does not seem to rise to the level of irreparable injury.") (citing Zenith Radio Corp. v. United States, 710 F.2d 806, 810 (Fed. Cir. 1983)).

Here, Weeks has not alleged that it will lose profits under the Solicitation, but, even if it did, loss of profits is the same claim that can be advanced by every single disappointed bidder for a Government contract every time a competitor receives a contract award. That does not rise to the level of irreparable harm. It is also clear that any loss will not threaten the survival of Weeks' business. Further, as explained above, Weeks has admitted that it expects to be selected as a MATOC contractor. At best, Weeks speculates that certain unidentified contractors may lose task order contracts under the Solicitation. Under these facts, Weeks has not shown that it will

suffer irreparable harm if a permanent injunction is not issued.

Moreover, Weeks acknowledges that a number of RFP dredging contracts have been awarded by the Corps over the last two years. Compl. ¶16. If this process is so harmful to Weeks, surely it would have sought to enjoin these solicitations as well.

Weeks also claims that it will lose the opportunity to compete on a level-playing field because of the subjective nature of the procurement process. However, there is a subjective component to every procurement process not based solely on price. "Mere allegations of an unfair competitive bidding process are not sufficient to demonstrate an irreparable injury, however; if they were, any bid protest would involve an irreparable injury." OAO Corp. v. United States, 49 Fed.Cl. 478, 480 (2001). Moreover, as stated above, Weeks contends that the revised procurement procedures are, in fact, based solely on price – if this is the case, there is no subjective component. Finally, Weeks has made no showing that the competitive process here is anything but a level-playing field – for example, there is no evidence in the record or otherwise that any one contractor or group of contractors will disproportionately benefit from this process. In fact, the Corps has determined that the new procurement procedures will allow for a level playing field. AR21.[4]

In stark contrast to Weeks and as explained above, the Corps will suffer severe harm if

[4] Weeks cites two cases for the proposition that harm can occur as a result of the lost opportunity to compete in a fair competitive bidding process. Pl. TRO Mem.at 28. The cases cited, however, stand for the proposition that harm can occur to a contractor which demonstrates that it will actually lose business or win the contract but at a lower price. See Overstreet Elec. Co. V. United States, 47 Fed. Cl. 728, 744 (2000); United International Investigative Services, Inc. v. United States,41 Fed. Cl. 312, 323 (1998). Here, Weeks has not shown that it expects to lose profits or that it will lose contracts under the Solicitation.

the Solicitation does not proceed. The Corps determined that the old system was resulting in unacceptable delays and that "[i]t has become increasingly difficult in today's operating environment to obtain viable bids from responsible contractors capable of meeting performance requirements and time constraints." AR9. "Traditional delivery strategies are no longer timely or responsive or flexible enough to meet current needs given the volatile operating environment. Therefore, improved acquisition strategies must be acquired and adopted so that projects can be delivered faster and cost effectively, while still appropriately balancing costs, schedule, and performance." AR15. Requiring the Corps to continue with such a flawed system will also, among other things, have a devastating effect on the Army, Navy and Marine Corps. AR17.

### D. Public Interest

The dredging work provided by contracts issued under the new procedures is essential and time-sensitive. The new-work dredging required by this acquisition is essential to ensure the ability of ocean-going vessels to safely navigate waterways along the South Atlantic. The work is also time-sensitive because of work restrictions resulting from environmental windows that limit the time period during which major, contract-essential work may be performed. It is in the public interest that this work should continue as scheduled during the permissible work window.

This Court has also recognized the strong public interest in not interfering with the procurement process of Government agencies. See LABAT-Anderson, Inc. v. United States, 65 Fed. Cl. 570, 581 (2005) (public interest is not served by interfering with procurement process so long as the agency did not violate applicable laws and regulations); JDL Constr., Inc., v. United States, 14 Cl. Ct. 825, 829 (1988) (judicial intervention in the contract procurement and administration process is a drastic and extraordinary remedy). In addition, the public has an

interest in "minimizing the costs of federal procurements." Vanguard Sec. Inc. v. United States, 20 Cl. Ct. 90, 113 (1990). Under its anticipated procurement, not only will the administrative costs of the procurement actions be reduced, as discussed above, but the Corps will no longer have to rely on expensive sole source procurements in emergency situations.

In short, given Weeks' inability to demonstrate success on the merit, the lack of harm to Weeks, the severe harm to the Government, and the public interest in insuring that the Solicitation proceeds, Weeks has not and cannot show by clear and convincing evidence that the Court should take the extraordinary step of awarding injunctive relief.[5]

## CONCLUSION

For the foregoing reasons, the Court should deny Weeks' motion for judgment on the administrative record and should grant defendant's motion for judgment on the administrative record and motion to dismiss.

---

[5] Weeks is certainly not entitled to the injunctive relief it seeks - that is, an injunction directing the contracting officer to proceed with the procurement using sealed bid procedures. While Weeks might seek an injunction preventing the Corps from proceeding under the new procedures, it cannot seek an injunction requiring the Corps to revert to the previous system. Hayes v. North State Law Enforcement Officers Ass'n, 10 F.3d 207, 217 (4th Cir.1993) ("Although injunctive relief should be designed to grant the full relief needed to remedy the injury to the prevailing party, it should not go beyond the extent of the established violation"); United Int'l Investigative Serv., Inc. v. United States, 41 Fed. Cl. 312, 324 (1998) ("The court is mindful that it should exercise its equitable powers in a way which best limits judicial interference in contract procurement.") (citations omitted).

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

/s/ L. Misha Preheim
L. MISHA PREHEIM
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L St., NW
Washington, D.C. 20530
Tele: (202) 305-3087
Fax: (202) 305-1571

October 17, 2007

Attorneys for Defendant

**CERTIFICATE OF FILING**

I hereby certify that on this 17th day of October, 2007, a copy of the foregoing "DEFENDANT'S MOTION TO DISMISS COUNTS III AND IV, MOTION FOR JUDGMENT UPON COUNTS I AND II UPON THE ADMINISTRATIVE RECORD, AND OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ L. Misha Preheim