No. 07-700C
(JUDGE WHEELER)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

---

WEEKS MARINE, INC.
Plaintiff,

v.

THE UNITED STATES,
Defendant

---

# DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTS III AND IV AND MOTION FOR JUDGMENT UPON COUNTS I AND II UPON THE ADMINISTRATIVE RECORD

---

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director
L. MISHA PREHEIM
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L St., NW
Washington, D.C. 20530
Tele: (202) 305-3087
Fax: (202) 305-1571

Dated: October 22, 2007

Attorneys for Defendant

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES. . . . . . . . . . ii

STATEMENT OF FACTS. . . . . . . . . . 2

ARGUMENT. . . . . . . . . . 2

I. THE UNITED STATES IS ENTITLED TO JUDGMENT UPON COUNTS I AND II OF PLAINTIFF'S COMPLAINT UPON THE ADMINISTRATIVE RECORD. . . . . . . . . . 2

A. Plaintiff Has Failed To Prove A Clear Violation Of A Regulation Or Procedure Or That The Corps Otherwise Acted In An Arbitrary And Capricious Manner. . . . . . . . . . 2

1. The Corps Has Not Violated 10 U.S.C. § 2304(a) Because The Award Will Not Be Made On The Basis of Price. . . . . . . . . . 2

2. The Corps Has Not Violated Its Engineer Federal Acquisition Regulation Supplement Because Normal Selection Procedures Will Cause An Unacceptable Delay.. . . . . . . . . . 4

B. The Solicitation Meets The Agency's Minimum Needs And The Decision To Utilize The MATOC IDIC Was Not Arbitrary And Capricious . . . . . . . . . . 8

1. Standard Of Review. . . . . . . . . . 8

2. The Solicitation Meets The Agency's Minimum Needs Because It Will Shorten The Procurement Time, Will Result In Significant Cost Savings, And Will Allow The Agency Thoroughly To Consider the Past Performance Of Contractors. . . . . . . . . . 9

3. The Solicitation Meets The Agency's Minimum Needs Because It Will Allow The Agency To Respond Quickly To Unexpected Events, Will Reduce The Need To Issue Emergency Contracts, Will Enhance Competition, And Will Benefit Small Business. . . . . . . . . . 11

C. Plaintiff Cannot Demonstrate Prejudice. . . . . . . . . . . . . . . . . . . . . . . . . . . 16

II. THE COURT SHOULD DISMISS COUNTS III AND IV FOR FAILURE TO STATE A CLAIM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

A. Plaintiff's Unfair Competition Claim Should Be Dismissed. . . . . . . . . . . 17

B. Plaintiff's Claim That Bid Protest Procedures Will Be Limited Should Be Dismissed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

III. PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF. . . . . . . . . . . . . . . . 19

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Alfa Laval Separation, Inc. v. United States,
40 Fed.Cl. 215 Fed.Cl. (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Bean Dredging Corp. v. United States,
22 Cl.Ct. 519 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Blue & Gold Fleet, L.P. v. United States,
492 F.3d 1308, 1313 (Fed. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Camp v. Pitts,
411 U.S. 138, 142 (1973).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Day & Zimmerman Servs. v. United States,
38 Fed. Cl. 591, 610 (1997).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Erinys Iraq Ltd. v. United States,
No. 07-562c, 2007 WL 2714167 (Ct. Cl. September 14, 2007). . . . . . . . . . . . . . . . . . . . . . . . 20

Essex Electro Eng'rs, Inc. v. United States,
3 Cl.Ct. 277, (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Fire-Trol Holdings, LLC v. United States,
66 Fed. Cl. 36 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Great Lakes Dredge & Dock Co. v. United States,
60 Fed.Cl. 350 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Hawaiian Dredging Const. Co., Inc. v. United States,
59 Fed.Cl. 305, 306 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Honeywell, Inc. v. United States,
870 F.2d 644 (Fed. Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed. Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

M. Steinthal & Co. v. Seamans,
455 F.2d 1289 (D.C. Cir. 1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Overstreet Elec. Co. v. United States,
47 Fed.Cl. 728, 729 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Quality Transport Servs., Inc. v. United States,
12 Cl. Ct. 276, 282 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

TRW Environmental Safety Sys, Inc. v. United States,
18 Cl.Ct. 33 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United Enter. & Assocs. v. United States,
70 Fed. Cl. 1, 26 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Wit Assocs., Inc. v. United States,
62 Fed. Cl. 657, 662 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

XTRA Lease, Inc v. United States,
50 Fed. Cl. 612, 624 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

**STATUTES AND REGULATIONS**

10 U.S.C § 2304.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 8

28 U.S.C. § 1491. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

FAR 6.401. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

EFARS 16.501. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

FAR 5.203. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

48 C.F.R. § 6.101(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

48 C.F.R. § 11.002(a)(1)(ii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| WEEKS MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-700C |
| | ) | (Judge Wheeler) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTS III AND IV AND MOTION FOR JUDGMENT UPON COUNTS I AND II UPON THE ADMINISTRATIVE RECORD**

Pursuant to Rules 52.1 and 12(b) of the Rules of the United States Court of Federal Claims ("RCFC") and this Court's order, dated October 10, 2007, defendant, the United States, respectfully submits this reply in support of its motion to dismiss counts III and IV and motion for judgment upon the administrative record upon counts I and II of plaintiff's complaint, which we filed on October 17, 2007.

In its memorandum in support of plaintiff's motion for judgment on the administrative record ("Pl's. Memo"), plaintiff, Weeks Marine, Inc. ("Weeks"), attacks the solicitation ("Solicitation") proposed by the Army Corps of Engineers ("Corps") by asserting that the Solicitation violates two statutory or regulatory provisions, lacks a rational basis, fails to meet the agency's minimum needs, will restrict competition, and will limit the ability of contractors to protest. While Weeks may reach different conclusions as to the administration of dredging contracts in the South Atlantic Division of the Corps, because the Solicitation has a rational basis, meets the agency's minimum needs, and does not violate any statute or regulation, it should not be overturned. Indeed, given the considerable deference afforded agencies to

establish procurement procedures, Weeks' inability to meet its heavy burden of showing a clear and prejudicial violation of a statute or regulation or that the Solicitation is arbitrary and capricious, and its inability to demonstrate the necessity of injunctive relief through clear and convincing evidence, Weeks' motion should be denied, and the Court should grant the Government's motion to dismiss and motion for judgment.

## STATEMENT OF FACTS

Defendant incorporates the statement of facts from its initial brief filed on October 17, 2007, as its counter-statement of facts. Govt. Br. at 4-10.[1]

## ARGUMENT

### I. THE UNITED STATES IS ENTITLED TO JUDGMENT UPON COUNTS I AND II OF PLAINTIFF'S COMPLAINT UPON THE ADMINISTRATIVE RECORD

#### A. Plaintiff Has Failed To Prove A Clear Violation Of A Regulation Or Procedure

##### 1. The Corps Has Not Violated 10 U.S.C. § 2304(a) Because The Award Will Not Be Made On The Basis Of Price

Weeks asserts that the Corps has violated 10 U.S.C. § 2304(a). As explained in the Government's initial brief, this is incorrect because, under the Solicitation, factors in addition to price will be considered.[2]

---

[1] "Govt. Br. at __" refers to the Defendant's Motion to Dismiss Counts III and IV, Motion for Judgment Upon the Administrative Record Upon Counts I and II, and Opposition to Plaintiff's Motion for Judgment on the Administrative Record, filed on October 17, 2007.

[2] In addition, while the Corps need only show that one of the four conditions set forth in 10 U.S.C. § 2304(a) is present, a second is present as well. The Corps expects that, in many instances, time will not permit the solicitation, submission, and evaluation of sealed bids.

With respect to this claim, Weeks makes one new argument. Weeks cites to the Acquisition Plan, which states that "Task orders will be awarded on a competitive basis using primarily Low Price Technical Acceptable (LPTA) procedures; however, Best Value Tradeoff procedures may be used to ensure that the Government gets the best overall value if deemed appropriate on a particular project." Pl's Memo at 23, citing AR14. Since LPTA procedures will be used, Weeks maintains, there is no difference between the factors considered under the Solicitation and those considered under sealed bidding. However, the task order procedures were modified since the Acquisition Plan was completed. As the Solicitation makes clear:

> After eliminating any proposal that does not meet standards of acceptability for the Technical Merit factor, the Source Selection Authority will use a trade-off process (considering past performance, utilization of small business concerns, and price) to determine which offer(s) represent the best value to the Government. This process allows the Source Selection Authority to consider making award to other than the lowest priced offer or other than the least risky (from a past performance and utilization of small concerns point of view) offer. **Past performance is considered significantly more important than price. Utilization of Small Business Concerns is considered significantly less important than Past Performance and Price. All evaluation factors, when combined, are significantly more important than price.**

AR148 (emphasis in original). Thus, past performance will always be considered in the issuance of task orders. Indeed, the Corps has already made this clear in a letter to Weeks. See AR1986 ("The Contracting Officer most assuredly will consider past performance including quality and timeliness as a minimum. . . .").

Because the Corps will consider factors other than price under the Solicitation, Weeks

cannot demonstrate a clear violation of 10 U.S.C. § 2304(a).[3]

**2. The Corps Has Not Violated Its Engineer Federal Acquisition Regulation Supplement Because Normal Selection Procedures Will Cause An Unacceptable Delay**

The Engineer Federal Acquisition Regulation Supplement ("EFARS") makes clear that Indefinite Delivery Contracts ("IDCs") may be used if "[t]he time required to procure the required services or supplies individually through normal selection procedures will cause an unacceptable delay in fulfilling the requirements. . . ." EFARS 16.501. As explained in the Government's initial brief, the Corps has not violated the EFARS because normal selection procedures will cause an unacceptable delay.

Sealed bidding causes an unacceptable delay for a number of reasons. First, environmental windows already compress the schedule for dredging in much of the Region. AR9, 27. Second, the Corps is often faced with limited contractors from which to chose because of increased competition among Districts. AR8, 25. Third, delay can occur because of the inability of certain contractors to adequately perform a given job. AR53. Fourth, advance notice required under sealed bidding increases the procurement time. AR18. Fifth, under sealed bidding, the Corps is required to issue a detailed Invitation for Bids ("IFB") for each project, while task orders can be less detailed because much of the information contained in the multiple award task order contracts ("MATOC") solicitation will not need to be repeated. AR 18. Sixth,

[3] Weeks states that the Corps "has not met its burden of establishing that the factors in FAR 6.401 do not apply." Pl's Memo at 8. Actually, the Corps does not have any such burden. Rather, the burden here is on Weeks. See, e.g., Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001) ("[T]he disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.")

delay may occur because of the necessity of dealing with unplanned dredging events. AR9-10.

There is no dispute that the Solicitation will reduce the time of the procurement process. Even Weeks acknowledges that the time will be reduced by at least 15 days. Pl's. Memo at 17. In fact, the reduction could be as much as 30 to 45 days.

The Solicitation will reduce the delay for the following reasons. First, competition among Districts will be eliminated through the use of a region-wide approach, thereby enabling the Corps to better coordinate and prioritize projects and find suitable contractors with ready access to necessary equipment.[4]

Second, the Solicitation will enable the Corps more fully to consider past performance in the context of a given task order. As explained in the Government's opening brief, in the past, the Corps has been forced to award jobs to contractors with satisfactory past performance, but which may not have the required level of past performance necessary for a given job. Under sealed bidding, a determination of whether a contractor's performance on a particular job is satisfactory or unsatisfactory is similar to a pass/fail test. Thus, a contractor with almost flawless

[4] On a number of occasions, Weeks states that the fact that the Corps has excelled at its mission in the past means that there is no reason to depart from sealed bidding. While it is true that the Corps has excelled in the past, it nevertheless is also true that the sealed-bidding system creates many problems that the agency believes need to be rectified. As made clear in the Acquisition Plan, "[t]raditional delivery strategies are no longer timely or responsive or flexible enough to meet current needs given the volatile operating environment. Therefore, improved acquisition strategies must be acquired and adopted so that projects can be delivered faster and cost effectively, while still appropriately balancing costs, schedule, and performance." AR15. "Not providing timely execution of maintenance dredging in the vicinity of military installations, such as Kings Bay, Mayport, and Charleston Navy Bases and the Marine Corps Terminal at Blount Island will have devastating impacts on the Army, Navy, and Marine Corps' ability to provide national security as well as meet the current global operational requirements. Ultimately, the ability to respond to the global war on terrorism would be negatively impacted." AR17.

performance may receive the same rating as a contractor that met only minimum requirements and may have been somewhat late in performing a job. Many projects require a more stringent evaluation of past performance. For example, projects with very short performance periods or work in environmentally sensitive areas must be performed by a reliable contractor with a stellar past performance record. Otherwise, these critical projects may be in jeopardy of not being completed. This problem will be solved by the Solicitation, which allows the Corps thoroughly to consider this factor.

Third, under the Solicitation, the Corps is not required to issue advanced notice for task orders, as it would be under sealed bidding. FAR 5.203. As Weeks acknowledges, this alone will reduce the procurement time by at least 15 days.

Fourth, the Solicitation gives the Corps the flexibility to shorten the response time for task orders whenever necessary. In contrast, under sealed bidding, the Corps is required to provide contractors with a 30-day response time. FAR 5.203(b). Weeks incorrectly claims that the Corps "has stated that it plans to continue to allow the normal 30-45 day response time that the industry and bidders in general, have always been afforded to prepare a bid." Pl's. Memo at 17. In fact, the Corps made clear that "[r]esponse times for individual projects (RFPs for Task Orders) will be determined on an individual case-by-case basis. Normal response times (i.e., 30-45 days) will be maintained whenever possible; however, response times may be shortened when necessary to meet the Government needs and the requirements of the customer." AR415. Thus, the Solicitation provides the Corps the flexibility to shorten response times when necessary, thereby saving 30 to 45 days.

Fifth, the Corps is not required to issue detailed IFBs when issuing task orders. While it

has provided a significant level of detail with respect to the initial MATOC contracts, it will not need to do so with respect to all subsequent task orders. Much information contained in the Solicitation will become a part of the contract with no need for it to be repeated for the individual tasks. Some task orders involving routine projects may be significantly less detailed. This will shorten the procurement time as well.

Weeks makes much of the fact that the Corps knows what projects it will pursue well in advance of issuing contracts or task orders. While the Corps may know many of the jobs that it expects to pursue, it does not know all of them. In addition, the Corps frequently does not know which projects will be funded, when they will be funded, which may be affected by environmental issues, or which may be affected by unexpected storm events. Even a savings of a few days can be significant, given that “hurricanes and other storm events increase shoaling in many harbors and channels virtually overnight and the inability of USACE to respond quickly presents very real economic hardships.” AR18. Further, task orders give the Corps more flexibility to better determine the sequence of projects. For example, under sealed bidding, the Corps may be in a situation where a given project has been awarded, but the contractor cannot quickly perform the contract because of unexpected delays on another job. Task orders do not require as lengthy a lead time as sealed bidding, so the Corps can more easily take into account the fact that a contractor may be busy with another project. The Corps could then award the task order to a contractor that can actually complete the new project in the requisite time-frame. In addition, funding restrictions may require that a project be completed in a given year. “The increased use of Congressional Inserts as well as the delays in getting both military and civil works appropriation and authorization bills signed cause significant schedule impacts. . . . This

will be mitigated by the development of IDIQs which allow for a significant reduction in acquisition time." AR17.

In sum, the agency has determined that the delay inherent in the sealed-bidding system was unreasonable and will be significantly reduced by the Solicitation. The Corps has not violated its regulations.[5]

### B. The Solicitation Meets The Agency's Minimum Needs And The Decision To Utilize The MATOC IDIC Was Not Arbitrary and Capricious

#### 1. Standard Of Review

Weeks now contends that the Solicitation does not meet the agency's minimum needs. Weeks also asserts that the Corps' decision to utilize the Solicitation instead of sealed bidding was arbitrary and capricious.

The Competition in Contracting Act ("CICA") imposes upon an agency a duty to "obtain full and open competition." Id. at 41 (citing 41 U.S.C. § 253(a)(1)(a)); see also 10 U.S.C § 2304. The Federal Acquisition Regulation ("FAR") specifies that an agency "shall provide for full and open competition through use of the competitive procedure(s) . . . that are best suited to the circumstances of the contract action and consistent with the need to fulfill the Government's requirements efficiently." 48 C.F.R. § 6.101(b). The FAR requires that "restrictive provisions" be included in solicitations only "to the extent necessary to satisfy the needs of the agency or as

---

[5] Weeks asserts that the fact that the Corps' Detroit District successfully utilized a MATOC should not provide a basis for this Solicitation because the Detroit MATOC was used for relatively small dredging projects. However, the fact that this approach has been successfully utilized elsewhere (and did not destroy the dredging industry), even if on a smaller scale, provides evidence that it will be successful here as well. It also shows that the Corps has not pursued this method of procurement in an arbitrary or capricious manner, but, rather, has tested this approach prior to implementing it on a larger scale.

authorized by law." 48 C.F.R. § 11.002(a)(1)(ii).

Solicitation terms thus must have a rational relationship with an agency's minimum needs and must not be unduly restrictive. Wit Assocs., Inc. v. United States, 62 Fed. Cl. 657, 662 (2004). The determination of an agency's minimum needs "is a matter within the broad discretion of agency officials . . . and is not for this court to second guess." Id. (internal citations omitted). An agency's determination of the "best method of accommodating" its needs also falls within the agency's discretion. United Enter. & Assocs. v. United States, 70 Fed. Cl. 1, 26 (2006). A plaintiff bears the burden of proving that a solicitation does not meet an agency's minimum needs. Wit Assocs., 62 Fed. Cl. at 662 n.6.[6]

**2. The Solicitation Meets The Agency's Minimum Needs Because It Will Shorten The Procurement Time, Will Result In Significant Cost Savings, And Will Allow The Agency Thoroughly To Consider The Past Performance Of Contractors**

Here, Weeks attacks the Solicitation as not meeting the agency's minimum needs and/or as being arbitrary and capricious for a number of reasons. First, Weeks claims that the Corps does not need to shorten the procurement time and that, even if it did, the Solicitation will only

[6] Weeks cites XTRA Lease, Inc v. United States, 50 Fed. Cl. 612, 624 (2001), for the proposition that a solicitation "should be written in as non-restrictive a manner as possible in order to enhance competition and invite innovation." Pl's. Memo at 15. In fact, the XTRA Lease Court stated that, "[i]n order to enhance competition and invite innovation, specifications and statements of work should be written in as non-restrictive a manner as possible." The Court then went on to explain that "[t]he determination of an agency's minimum needs is a matter within the broad discretion of agency officials. It is not the duty of the court to second guess such determinations." Id. at 625. The Court did not hold that a solicitation must be written in the least restrictive possible way. Moreover, the FAR makes clear that restrictive conditions may be placed in a solicitation "to the extent necessary to satisfy the needs of the agency or as authorized by law." 48 C.F.R. § 11.002(a)(1)(ii) (emphasis added). In addition to satisfying the needs of the agency, the two restrictions that Weeks attacks are fully authorized by law – the Corps is not required to use sealed bidding and is permitted to use IDCs.

shorten the procurement time by 15 days. As explained above, Weeks is incorrect.

Weeks next contends that the fact that the Corps will realize administrative costs savings of approximately $1.4 million dollars is not a sufficient justification for consolidation of contract requirements. In fact, the Defense Federal Acquisition Regulation Supplement ("DFARS") states that "[s]avings in administrative or personnel costs alone do not constitute a sufficient justification for a consolidation of contract requirements unless the total amount of the cost savings is expected to be substantial in relation to the total cost of the procurement." DFARS 207.170-3 (emphasis added). The Corps has never claimed that these cost savings, by themselves, are the justification for the Solicitation. However, this significant cost savings is nevertheless a factor that weighs in favor of the Solicitation.

Weeks also claims that the past performance determination is simply the same determination made under sealed bidding. As explained in detail in the Government's initial brief, this argument is without any basis. The analysis in which the agency will engage through the Solicitation here differs significantly from the analysis performed under sealed bidding. This alone is sufficient justification for the Corps' decision to utilize the MATOC approach. Weeks also seems to believe that the Corps does not need to consider past performance with respect to dredging projects. Weeks is incorrect. Dredging involves much more expertise than simply removing sand from a channel. Given the environmental issues, the fact that dredging impacts military preparedness, the limited time frame in which contracts must be performed, and the fact that large machinery is being utilized in shipping lanes and near military installations, it is perfectly reasonable for the Corps to consider more than simply whether a contractor has a "satisfactory" performance record.

### 3. The Solicitation Meets The Agency's Minimum Needs Because It Will Allow The Agency To Respond Quickly To Unexpected Events, Will Reduce The Need To Issue Emergency Contracts, Will Enhance Competition, And Will Benefit Small Business

Weeks next argues that the fact that there has been an increase in shoaling and erosion in recent years is not a sufficient basis for the Corps to change its procurement methods. According to Weeks, the Corps should ignore expert analysis indicating that hurricanes and other storm events will increase in the future, as well as the fact that 2004 brought severe storm events to much of the Region. Weeks' argument should be rejected. Simply because Weeks may disagree with the assessment of weather experts is not a basis for requiring the Corps to ignore these findings. Fire-Trol Holdings, LLC v. United States, 66 Fed. Cl. 36, 40 (2005) (when the Court considers "a purely factual question within an area of competence of an administrative agency created by Congress . . . the Court will recognize the relevant agency's technical expertise and defer to its analysis unless it is without substantial basis in fact.") (internal quotes and citations omitted). The Corps is not only is entitled, but has an obligation, to take action and develop a procurement method that will enable it to respond quickly and effectively to storm events. Hurricane Katrina devastated huge portions of the Gulf Coast, and it is predicted that shoaling will continue to increase. AR10. Weeks' attempt to require the Corps to ignore this likelihood and assume a best-case scenario should be summarily rejected.

Weeks also states that only a small number of contracts have been awarded as emergency contracts during the past two years and that such contracts do not lead to higher prices. Therefore, claims Weeks, the Corps should not attempt to eliminate the issuance of emergency contracts. As an initial matter, Weeks' focus on the past two years is misplaced and conveniently

excludes the record-setting storm season experienced in Florida in 2004. The Corps must take a long-term view and consider the fact that storm events are likely to increase, thereby requiring more and more emergency awards. Further, Weeks' argument that emergency contracts somehow save the Government money and allow for ample competition is without any basis. Indeed, the FAR refers to such contracts as "other than full and open competition." FAR 6.3. Put simply, the Corps has an obligation to promote competition and reduce the necessity of emergency contracts whenever possible. Merely because it could conceivably continue to award emergency contracts (and likely at an ever increasing rate) does not mean that it should.

Weeks also claims that it is the finite size of the dredging industry and the availability of equipment that reduces competition. However, this only supports the Corps' decision to modify its procurement process to allow better prioritization and efficiency of work. This new and more flexible process should allow for more work to be accomplished and fewer projects to be placed in jeopardy or cancelled because of factors such as environmental windows closing or funding being lost. In addition, performing emergency dredging by task order increases the opportunity for competition over the former practice of procuring such work by the less favored method of sole sourcing.

Weeks then claims that, because the dredging industry has significant barriers to entry (notably, high start-up costs), the Corps' decision to utilize the MATOC is not reasonable because that approach will, in fact, limit competition. Weeks makes the bald assertion that new companies will be prevented from entering the market. Even if this unsupported statement were true (which it is not), this is not Weeks' argument to make since it will not be excluded from entering the market and would, in fact, benefit from fewer competitors. Weeks' statement is also

incorrect since the Solicitation allows the contracting officer to replenish the pool of contractors each year. AR93. There is also no evidence in the record of a single contractor that will be excluded from the Solicitation. If anything, the Solicitation will enhance competition because it will allow the Corps to consider factors other than price when awarding task orders, thereby rewarding contractors that excelled in the past but that might not be as competitive on price.

Weeks also asserts that the Solicitation will not offer any advantage with respect to addressing the restrictions on when dredging can occur (for example, because of environmental windows). Weeks claims that the Corps could take a regional approach to awarding contracts but still utilize sealed bidding. Weeks misunderstands the issue. The issue is not whether the Corps could accomplish certain of its objectives through other contracting mechanisms. Rather, the issue is whether the Solicitation meets the Corps' minimum needs and is not otherwise arbitrary or capricious. This analysis entails a significant amount of deference to the agency. Wit Assocs., 62 Fed. Cl. at 662 (holding that the determination of an agency's minimum needs "is a matter within the broad discretion of agency officials . . . and is not for this court to second guess."); XTRA Lease, 50 Fed. Cl. at 620 ("Contracting officials, however, may properly exercise wide discretion in their application of procurement regulations. In this regard, the court cannot substitute its judgment for that of the agency, even if reasonable minds could reach differing conclusions.") (citations omitted); Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) ("If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations.") (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971)). As explained above, given the limited

time period in which dredging often occurs, the Corps must make every effort to bring projects quickly to fruition. The Solicitation is expected significantly to reduce the procurement time cycle and to afford the Corps flexibility that it did not have under sealed bidding. Simply because there are other means by which the Corps might address a problem does not mean that the selected route is unreasonable. Further, many of the other problems of sealed bidding – for example, the inability of the Corps to consider factors other than price, the problem of reducing the procurement time, and the cost to the Corps - cannot be solved merely by adopting a regional approach to procurement.

Weeks next expresses concern over the fact that the Corps hopes to synchronize the movement of dredges and project execution. Weeks claims that this evidences "an intent to exact control of a private industry in a manner that it impermissible in a free society and a free enterprise system." Pl's. Memo at 34. Weeks misunderstands the Solicitation and Government contracting in general. The Corps is attempting to insure that projects are completed efficiently and quickly. Obviously, this entails insuring that equipment is available, that contractors have the requisite past performance record for the job, and that contractors (and the Corps) can respond quickly to unexpected events. Under Weeks' view, every Government contract would "impermissibly" seek to control private industry because it asks industry to do something. Weeks seems to forget that it, like any other dredging contractor, is free to chose not to bid on a contract or task order if it cannot comply with the constraints of the job. That is the basis of the free-market system. Further, Weeks will surely be up to any challenges presented by the Solicitation, given Weeks' assertion that it "has a long history of successfully completing major dredging projects at locations throughout the United States, and its technical abilities and

financial and technical resources cannot reasonably be questioned." Pl's. Memo at 40.

Finally, Weeks contends that small business will be harmed by the Solicitation. Weeks is incorrect. The Solicitation offers a number of benefits to small businesses. The Solicitation considers the contractor's utilization of small business concerns (AR154-55); groups the projects that have historically been set aside for small businesses, thereby providing for the maximum practicable number of awards to small businesses (AR11, 51, 149); and gives the contracting officer the right to refresh the pool of contractors on an annual basis to add additional contractors that were not previously awarded a contract. AR93. Not only can small businesses compete for the task orders set aside for the small business group, but they can also submit proposals for work in the other groups if they have the capability of performing the work. AR93.[7]

[7] Weeks attaches two affidavits – that of Mr. Ware and Ms. Goodloe - to its brief. These affidavits are not part of the record and, therefore, should be stricken. See, e.g., Camp v. Pitts, 411 U.S. 138, 142 (1973) ("The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court"). In addition, the affidavit of Mr. Ware merely raises many of the same arguments made by Weeks. In her affidavit, Ms. Goodloe claims that her small company will not have sufficient equipment in place by the October 28, 2007 deadline to enable her to submit a proposal. She never explains why this would not also be true if sealed bidding procedures were used. She then states that she would be excluded from competing for any task orders if she does not submit a proposal. However, she acknowledges that the Corps has the right to refresh the pool of contractors every year. Finally, she states that it is unfair that the Corps requires posting of a ten million dollar bond. This statement reflects a misunderstanding of the bonding requirements. A bid bond in the amount of three million dollars is required with the submission of a proposal under the Solicitation. That bond will be released upon award. AR390, 425-426 Bid bonds will not be required for each individual task order. AR 98. The ten million dollars refers to a payment and performance bond capability. Payment and performance bonds will be required for each task order a contractor is awarded. AR 133, 391, 425-426. These requirements are no different than the bonding requirements applicable to sealed bidding. AR 390-391, 425-426. Moreover, the Corps confirmed that all companies who are interested in submitting proposals under the Solicitation meet this bonding requirement. AR18, 426. Indeed, Ms. Goodloe does not dispute that her company has this bonding capacity, but she worries that her bonding capacity would be tied up and that she would not have any assurance of winning any task orders. However, no

### C. Plaintiff Cannot Demonstrate Prejudice

Weeks now claims two forms of prejudice. First, Weeks contends that it will be prejudiced from "the likelihood that Weeks may be denied the full benefit of such a contract depending upon the vagaries of the task-order process under the MATOC system, a process that, as previously observed, is capable of being arbitrarily and capriciously administered without recourse to judicial review." Pl's Memo at 40. First, this statement is full of qualifiers, demonstrating that Weeks' statement about future harm is purely speculative at this point in time. Second, Weeks contends that the task order procedures are the same as under the sealed-bidding system. If this is true, Weeks cannot show that it will be harmed by the Solicitation. Third, Weeks claims that it "has a long history of successfully completing major dredging projects at locations throughout the United States, and its technical abilities and financial and technical resources cannot reasonably be questioned." Pl's Memo at 40. Given that statement, Weeks cannot logically contend that it will suffer under the task order procedures. If Weeks has the technical resources and the successful performance history that it claims, it will not, in fact, suffer any prejudice when those factors are considered by the Corps. Indeed, it should benefit.

Weeks also argues that "the effect of implementing the challenged solicitation would be to seriously restrict competition in an industry with comparatively few players as it is - thus prejudicing Weeks, which has adapted its operations to competition in a sealed-bid environment with open price competition." Pl's. Memo at 40. If, however, the Solicitation will restrict competition (which it will not), this will <u>benefit</u> Weeks. Put simply, Weeks cannot be prejudiced

---

company has any assurance of winning task orders, or any Government contract for that matter.

by having to compete with fewer companies. The mere fact that Weeks may be accustomed to sealed bidding does not mean that it cannot thrive under the Solicitation. Indeed, Weeks' own statements make this clear. The only prejudice that a contractor might conceivably claim from this Solicitation is that, while its past performance was satisfactory, it was nonetheless not exemplary and, as a result, the Corps' heightened review of past performance will cause it to lose task awards. Of course that result is not the sort of prejudice that would cause this Court to overturn the Solicitation.[8]

Because Weeks cannot demonstrate prejudice as a result of the alleged statutory or regulatory violations, its claims should be rejected.

## II. THE COURT SHOULD DISMISS COUNTS III AND IV FOR FAILURE TO STATE A CLAIM

### A. Plaintiff's Unfair Competition Claim Should Be Dismissed

Aside from the fact that Weeks has not adequately plead this cause of action and has not cited any statute or regulation that has been violated, it also lacks any factual basis for the argument that the Solicitation is anti-competitive. Indeed, Weeks recognizes that the real limits to competition here are the size of the dredging industry and the availability of equipment. Pl's. Memo at 29 ("Competitive responses to emergency solicitations are more a function of the finite small size of the dredging industry and whether or not contractors have suitable equipment."). If this is the case, it is not the Solicitation that will limit competition. Moreover, the Corps

[8] Weeks expresses concern over the fact that there is no assurance that bid prices will continue to be made available to all contractors. Pl's. Memo at 28. As Weeks recognizes, however, the Corps has simply left this decision up to the industry. If contractors that compete for a given task order agree, prices for that task order will be made available. AR97.

recognizes these constraints and expects the Solicitation to help alleviate their impact.

Further, the agency expects the Solicitation to enhance competition. Among other things, by considering factors other than price, such as past performance, the Solicitation should reward those companies that demonstrate excellence. The companies that may receive less work under the Solicitation are those with less than exemplary past performance as compared to other dredgers. That result is to be commended and is in no way anti-competitive.

### B. Plaintiff's Claim That Bid Protest Procedures Will Be Limited Should Be Dismissed

With respect to its claim that bid protest procedures will be limited under the Solicitation, Weeks still has not cited any legal or statutory violation and, further, failed to include this claim in its complaint. As set forth in our initial brief, the mere fact that the Solicitation will limit, in certain respects, the ability of contractors to protest the issuance of task orders is not a basis for this Court to enjoin the Corps from continuing with its Solicitation.[9] In fact, Weeks acknowledges that, "[w]hile Congress has, of course, determined that MATOC task orders need not be subject to judicial review, it is obvious that that evaluation was conducted under the assumption that MATOC procurements would not be used in situations where sealed bidding is statutorily mandated." Pl's Memo at 47 (emphasis in original). Of course, if MATOC procurements are used in situations where sealed bidding is not required, as here, these procurements are exempt from bid protests, and Weeks' claim should be rejected. Indeed, if

[9] Weeks neglects to mention that a contractor is permitted to protest the issuance of a task order if "the order increases the scope, period or maximum value of the contract." FAR 16.505(a)(5). In addition, complaints concerning task orders are reviewable by the agency ombudsman. FAR 16.505(b)(5).

Congress wants to change this law, it can, but, unless and until it does, the fact that MATOC procurements are exempt from bid protests is not a basis for finding the Solicitation unlawful.[10]

## III. PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF

As in its previous filings, Weeks continues to assert that it will suffer irreparable harm if the Solicitation proceeds. In so doing, Weeks cites a litany of cases for the proposition that "a party disappointed as a result of an arbitrary and capricious or illegal procurement award, will furthermore suffer irreparable harm as a result of its statute-based inability to recoup its full economic damages at law under 28 U.S.C. § 1491(b)(2)." Pl's Memo at 43. The cases cited, however, all involve contractors who bid on but lost an award. See Essex Electro Eng'rs, Inc. v. United States, 3 Cl.Ct. 277, (1983) (plaintiff was second lowest bidder); Quality Transp. Servs., Inc. v. United States, 12 Cl. Ct. 276, 282 (1987) ("an unsuccessful bidder can show irreparable harm merely by alleging that it will not be awarded the contract and earn the consequent profits thereunder."); TRW Environmental Safety Sys, Inc. v. United States, 18 Cl.Ct. 33 (1989) ("Plaintiff . . . was an unsuccessful bidder on the SEDM contract."); Bean Dredging Corp. v. United States, 22 Cl. Ct. 519 (1991) (plaintiff was unsuccessful bidder for dredging contract); Day & Zimmerman Servs. v. United States, 38 Fed. Cl. 591, 610 (1997) ("Plaintiff, Day and Zimmermann Services (DZS), the incumbent and unsuccessful bidder . . . ."); Alfa Laval Separation, Inc. v. United States, 40 Fed.Cl. 215 Fed.Cl. (1998) (explaining that plaintiff was unsuccessful bidder for Navy contract); Overstreet Elec. Co. v. United States, 47 Fed.Cl. 728,

[10] Weeks states that the discretion afforded under the Solicitation "carries the awful potential, should Weeks fall into disfavor because of some minor disagreement with the contracting officials, that Weeks' business over a five year period could be drastically curtailed." Pl's. Memo at 44. This remark has no basis whatsoever.

729 (2000) ("At issue is whether defendant acted arbitrarily and capriciously, and contrary to law, in rejecting plaintiff's low bid"); Hawaiian Dredging Const. Co., Inc. v. United States, 59 Fed.Cl. 305, 306 (2004) ("The issue to be decided is whether the contracting officer had a reasonable basis for rejecting plaintiff's bids...."); Great Lakes Dredge & Dock Co. v. United States, 60 Fed.Cl. 350 (2004) (explaining that low bidder challenged cancellation of solicitation); Erinys Iraq Ltd. v. United States, No. 07-562C, 2007 WL 2714167 (Fed. Cl. Sept. 14, 2007) (holding that plaintiff, which was excluded from competitive range, was not entitled to injunction).

These cases have no bearing on the case at hand. Here, Weeks admits that it will not lose any award under the MATOC. It now speculates, however, that it may lose task orders, but it offers no proof in this regard, and, as explained above, this speculation lacks any basis. Indeed, Weeks first contends that the task awards are based solely on price, which means that it cannot demonstrate any prejudice. Weeks also contends that it "has a long history of successfully completing major dredging projects at locations throughout the United States, and its technical abilities and financial and technical resources cannot reasonably be questioned." Pl's. Memo at 40. Given this fact, Weeks should have no reason to fear a solicitation that takes into account factors such as past performance and technical ability. Put simply, Weeks cannot demonstrate any harm, let alone the requisite irreparable harm.[11]

[11] Weeks cites Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1313 (Fed. Cir. 2007), for the proposition that "the proper procedure for a potential bidder or offeror to object to the terms of a procurement solicitation is to bring a pre-bid challenge to those terms." Indeed, the Court made clear that a bidder who fails to do so waives its right to object to the solicitation. The Federal Circuit, however, did not curtail the requirement that a plaintiff demonstrate irreparable harm or the requirement that a plaintiff demonstrate prejudice.

In sum, Weeks cannot show by clear and convincing evidence that it will succeed on the merits, that it will suffer irreparable harm, that the balance of harm falls squarely in its favor, or that the public interest will benefit from an injunction. As a result, this Court should not take the extraordinary step of enjoining the Solicitation.

## CONCLUSION

For these reasons and the reasons set forth in our opening brief, we respectfully request that the Court grant our motion for judgment and motion to dismiss, deny Weeks' cross-motion and request for injunctive relief, and dismiss Weeks' complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director
/s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

/s/ L. Misha Preheim
L. MISHA PREHEIM
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L St., NW
Washington, D.C. 20530
Tele: (202) 305-3087
Fax: (202) 305-1571

Attorneys for Defendant

October 22, 2007

**CERTIFICATE OF FILING**

I hereby certify that on this 22nd day of October, 2007, a copy of the foregoing "DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTS III AND IV AND MOTION FOR JUDGMENT UPON COUNTS I AND II UPON THE ADMINISTRATIVE RECORD" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ L. Misha Preheim