IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WEEKS MARINE, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 07-700C |
| | : | (Judge Wheeler) |
| THE UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO ENFORCE OR AMEND THE COURT'S ORDER DATED NOVEMBER 1, 2007 AND IN SUPPORT OF PLAINTIFF'S REQUEST FOR AN ORDER TO SHOW CAUSE AS TO WHY THE DEFENDANT SHOULD NOT BE FOUND TO BE IN CONTEMPT OF COURT**

Michael H. Payne, Esquire
Payne Hackenbracht & Sullivan
220 Commerce Dr., Suite 100
Ft. Washington, PA 19034
215-542-2777
215-542-2779(fax)
mhp@phslegal.com

Attorney of Record for
WEEKS MARINE, INC.

OF COUNSEL:

Joseph A. Hackenbracht, Esquire
Timothy A. Sullivan, Esquire
Payne Hackenbracht & Sullivan

# TABLE OF CONTENTS

Table of Authorities....................................i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO ENFORCE OR AMEND THE COURT'S ORDER DATED NOVEMBER 1, 2007 AND IN SUPPORT OF PLAINTIFF'S REQUEST FOR AN ORDER TO SHOW CAUSE AS TO WHY THE DEFENDANT SHOULD NOT BE FOUND TO BE IN CONTEMPT OF COURT..............................................1

I. Issues Presented......................................2

II. Statement of the Case...............................2

III. Statement of Facts.................................3

IV. ARGUMENT...............................................6

A. Jurisdiction Standard of Review......................6

B. The Defendant Has Violated the Court's Order Dated November 1, 2007, By Advertising Its Intention To Continue to Procure Dredging Projects Through Contracting By Negotiation Under FAR, Part 15...................................8

C. The Violation Was More Than *De Minimis* Or Technical Noncompliance.............................13

D. The Conduct Was Not The Product Of A Good Faith And Reasonable Interpretation Of The Court's Order......................................14

E. The Defendant Should Be Directed To Show Cause As to Why It Should Not Be Found In Contempt Of Court...............................................16

F. The Court Is Requested to Amend Its Order Dated November 1, 2007 To Further Clarify The Limits On The Agency's Discretion To Employ Contracting By Negotiation In the Solicitation Of Maintenance Dredging And Shore Protection Projects..............17

CONCLUSION...............................................18

# Table of Authorities

## Cases

Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc., 154 F.3d 1345 (Fed.Cir. 1998) ........ 8

Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234 (Fed.Cir. 2002) ........ 8

California Artificial Stone Paving Co. v. Molitor, 113 U.S. 609, 5 S. Ct. 618, 28 L. Ed. 1106 (1885) ........ 7

Filtration Development Co., LLC v. U.S., 63 Fed. Cl. 418 (2005) ........ 6, 14

Illinois v. United States, 15 Cl. Ct. 399 (1988) ........ 7

KSM Fastening Sys., Inc. v. H.A. Jones Co., Inc., 776 F.2d 1522 (Fed.Cir. 1985) ........ 7

MAC Corp. of America v. Williams Patent Crusher & Pulverizer Co., 767 F.2d 882 (Fed.Cir. 1985) ........ 7

Maness v. Meyers, 419 U.S. 449, 95 S. Ct. 584, 42 L. Ed. 2d 574 (1975) ........ 6

McComb v. Jacksonville Paper Co., 336 U.S. 187, 69 S. Ct. 497, 93 L. Ed. 599 (1949) ........ 8

Miller-Holzwarth, Inc. v. United States, 44 Fed. Cl. 156 (1999), rev'd on other grounds, 232 F.3d 905 (Fed.Cir. 2000) ........ 6

Morris v. United States, 37 Fed. Cl. 207 (1997) ........ 7

Navajo Nation v. United States, 46 Fed. Cl. 353 (2000) ........ 8

Preemption Devices, Inc. v. Minnesota Min. & Mfg. Co., 803 F.2d 1170 (Fed.Cir. 1986) ........ 7

SDS Int'l, Inc. v. United States, 55 Fed. Cl. 363 (2003) ........ 8

**Statutes**

10 U.S.C. § 2304(a)................................ 2, 9, 12, 17

28 U.S.C. § 2521(b)...................................... 6

28 U.S.C. § 2521(b)(c)................................. 14, 16

**Regulations**

FAR ¶ 6.302........................................12

FAR ¶ 6.302-2......................................4,12

FAR ¶ 6.401(a)..................................2, 9, 17

FAR ¶ 9.104........................................11

FAR ¶ 14.103-1(a)...................................9

FAR ¶ 36.103........................................2

FAR ¶ 36.103(a).....................................9

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WEEKS MARINE, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 07-700C |
| | : | (Judge Wheeler) |
| THE UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO ENFORCE OR AMEND THE COURT'S ORDER DATED NOVEMBER 1, 2007 AND IN SUPPORT OF PLAINTIFF'S REQUEST FOR AN ORDER TO SHOW CAUSE AS TO WHY THE DEFENDANT SHOULD NOT BE FOUND TO BE IN CONTEMPT OF COURT**

Plaintiff, Weeks Marine, Inc., ("Weeks"), files this Motion to seek the Court's intervention to enforce the Order entered in this matter on November 1, 2007, and to require the Defendant to show cause as to why it should not be found to be in contempt of court. The Plaintiff requests the Court to schedule an expedited hearing and to direct the Corps of Engineers, South Atlantic Division ("SAD") not to proceed with the issuance of negotiated solicitations for the four projects identified as Entrance Channel, Kings Bay, Georgia and Fernandina Harbor, Florida; Intracoastal Waterway, Jacksonville to Miami, Florida; Captiva Island, Beach Renourishment Project, Lee County Florida; U.S. Naval Station, Maintenance Dredging, Mayport. These are the same four projects that the Defendant intended to solicit as negotiated task order procurements under the former IDIQ/MATOC

procurement that was permanently enjoined because the agency violated the law and regulations that require the use of sealed bidding except where certain conditions are met. The Court, in granting permanent injunctive relief, found that none of the exceptions applied and nothing has changed in the week that has passed since the entry of the Court's Order.

## I. ISSUES PRESENTED

The issues in this case are (1) Whether the Court's Opinion and Order dated November 1, 2007, when read together, prevent the Defendant from simply carving out the same four projects that were proposed to be issued as negotiated task orders for re-issuance as individual negotiated procurements; and (2) Whether a clarification or amendment of the Court's Order is warranted; and (3) Whether the Defendant's defiance of the Court's Order warrants an order to show cause as to why it should not be found to be in contempt of court.

## II. STATEMENT OF THE CASE

The Court enjoined the subject negotiated IDIQ/MATOC procurement because it violated the requirements of the Competition in Contracting Act, 10 U.S.C. § 2304(a), as codified in FAR ¶ 36.103 and FAR ¶ 6.401(a). The Court found that the law and regulations require that sealed bidding shall be used by contracting officers unless any of four conditions are met. In finding that none of those conditions were met the Court

concluded that there was no legal justification or rational basis for issuing the solicitation, and the underlying proposed dredging projects, on anything other than a sealed bidding basis. In reaching this conclusion, the Court opined that it "would be hard-pressed to identify any contracts better suited to sealed bid procurement than dredging. If not appropriate for dredging work, it is difficult to imagine when sealed bidding ought to be used." (Opinion, page 4). It is respectfully submitted that nothing has happened in the last week to require the Court to effectively reverse its opinion.

The recent issuance of four Presolicitation Notices providing for the solicitation, using contracting by negotiation procedures, of the same four task order projects that were identified in the enjoined IDIQ/MATOC procurement is a thinly veiled attempt to circumvent the Court's Opinion and Order. The intervention of the Court is required to assure that its earlier Order is enforced and to further assure that the agency understands that it cannot circumvent the Court's Order by simply issuing unwarranted negotiated procurements for maintenance dredging and shore protection projects on an individual negotiated procurement basis.

## III. STATEMENT OF FACTS

The Plaintiff will not burden the Court with a recitation of the underlying background and facts that are well known and that

have been fully pleaded and briefed. The Court is respectfully requested to incorporate the Complaint, the various briefs filed by the Plaintiff, as well as the Court's Opinion and Order, by reference. It is the events that occurred after the issuance of the Court's Opinion on November 1, 2007 that give rise to this Motion.

On November 7, 2007, only six days after the Court issued its decision, the Defendant issued the first of four Presolicitation Notices advertising, in FedBizOpps, its intention to solicit the four task order dredging projects that had been included in the IDIQ/MATOC solicitation on a negotiated basis (See Exhibits "A" through "D"). The remaining three Presolicitation Notices were issued on November 8, 2007. Among other things, the Notices provided the following:

> **Maintenance Dredging, 46-Foot Project, Entrance Channel (Cut-1N), Kings Bay, Georgia and Fernandina Harbor, Florida, Nassau County, Florida.** Award will be made to the offeror whose proposal represents the best value to the Government. The Contracting Officer will use a trade-off process to determine which offer represents the best value to the Government. All evaluation factors other than price, when combined, are slightly more important than price. The following factors will be used to determine best value: Technical Merit (plant and equipment availability), Past Performance, and Price. COMPRESSED TIMEFRAMES: This solicitation is being issued in accordance with FAR 6.302-2, Unusual and Compelling Urgency; therefore, the solicitation will be issued on or about 14 November 2007 with proposals due on or about 21 November 2007. In addition, the government anticipates that award will be made on or about 30 November and that the Notice to Proceed will be issued within 15 days after award.

(See Exhibit "A").

**Maintenance Dredging and Advance Maintenance Dredging, Intracoastal Waterway, Jacksonville to Miami, Florida, 12-Foot Project, Cut-V22 through Cut V-36, Volusia County, Florida.** Award will be made to the offeror whose proposal represents the best value to the Government. The Contracting Officer will use a trade-off process to determine which offer represents the best value to the Government. All evaluation factors other than price, when combined, are slightly more important than price. The following factors will be used to determine best value: Technical Merit, Past Performance, and Price. The solicitation will be issued on or about 26 November 2007 with proposals due on or about 3 January 2008.

(See Exhibit "B").

**Captiva Island, Beach Renourishment Project, Lee County, Florida.** Award will be made to the offeror whose proposal represents the best value to the Government. The Contracting Officer will use a trade-off process to determine which offer represents the best value to the Government. All evaluation factors other than price, when combined, are slightly more important than price. The following factors will be used to determine best value: Technical Merit, Past Performance, and Price. The solicitation will be issued on or about 26 November 2007 with proposals due on or about 3 January 2008.

(See Exhibit "C").

**U.S. Naval Station, Mayport, Florida, Entrance Channel, Turning Basin, Destroyer Slip, Carrier Basin, and Pier C-2, Maintenance Dredging, 42-Foot Project.** Award will be made to the offeror whose proposal represents the best value to the Government. The Contracting Officer will use a trade-off process to determine which offer represents the best value to the Government. All evaluation factors other than price, when combined, are slightly more important than price. The following factors will be used to determine best value: Technical Merit, Past Performance, and Price. The solicitation will be issued on or about 26 November 2007 with proposals due on or about 3 January 2008.

(See Exhibit “D”).

In the former IDIQ/MATOC procurement these projects were included as the initial task order packages for each of four “Groups” and were described as follows:

> Group I – Entrance Channel, Kings Bay, Georgia and Fernandina Harbor, Florida, AR 428-713; Group II – Intracoastal Waterway, Jacksonville to Miami, Florida, AR 714-1394; Group III – Captiva Island, Beach Renourishment Project, Lee County Florida, AR 1395-1668; and Group IV - U.S. Naval Station, Maintenance Dredging, Mayport, Florida, AR 1669-1937.

They are the same four projects that have now been advertised to be solicited under FAR, Part 15, Contracting by Negotiation, as described above.

## IV. ARGUMENT

### A. Jurisdiction and Standard of Review

The Court has previously held, in Filtration Development Co., LLC v. U.S., 63 Fed.Cl. 418 (2005), that:

> It is a fundamental premise of American jurisprudence, one which most certainly could be understood without any citation, that parties to a judicial proceeding must abide by court orders. Maness v. Meyers, 419 U.S. 449, 458, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975) (“We begin with the basic proposition that all orders and judgments of the court must be complied with promptly.”). Where the United States Court of Federal Claims discerns that a party has failed to obey its order, it may, pursuant to its “incidental powers,” “punish by fine or imprisonment, at its discretion, such contempt of its authority as ... disobedience or resistance to its lawful writ, process, order, rule, decree, or command.” 28 U.S.C. § 2521(b); see also Miller-Holzwarth, Inc. v. United States, 44 Fed.Cl. 156, 161 (1999) (“The court's power to impose sanctions derives from an express statutory grant.”), *rev'd on*

> *other grounds,* 232 F.3d 905 (Fed.Cir.2000) (unpublished). Such authority, however, also derives from the command that "a violation of a court order should be prosecuted in the court which issued the order." Illinois v. United States, 15 Cl.Ct. 399, 412 (1988).

It is understood, of course, that the Court cannot be expected to exercise its enforcement authority lightly. See Morris v. United States, 37 Fed.Cl. 207, 214 (1997). Accordingly, this Court has imposed a demanding burden of proof on the moving party. Preemption Devices, Inc. v. Minnesota Min. & Mfg. Co., 803 F.2d 1170, 1172 (Fed.Cir.1986) (explaining that civil contempt "is recognized as a severe remedy"). A party alleging a violation of a court order must substantiate its allegations through clear and convincing evidence. Id. (citing KSM Fastening Sys., Inc. v. H.A. Jones Co., Inc., 776 F.2d 1522, 1524 (Fed.Cir.1985)). An implicit corollary to the elevated standard of proof imposed in civil contempt proceedings is the proposition that a party will not be held in contempt if "there is a fair ground of doubt as to the wrongfulness of [the party's] conduct ...." MAC Corp. of America v. Williams Patent Crusher & Pulverizer Co., 767 F.2d 882, 885 (Fed.Cir.1985) (quoting California Artificial Stone Paving Co. v. Molitor, 113 U.S. 609, 618, 5 S.Ct. 618, 28 L.Ed. 1106 (1885)).

With this in mind, the moving party relinquishes its burden by showing, through clear and convincing evidence, that: "(1) the offending party violated an order of the Court; (2) the violation

was more than *de minimis* or technical noncompliance; and (3) the conduct was not the product of a good faith [and] reasonable interpretation of the order." Navajo Nation v. United States, 46 Fed.Cl. 353, 358 (2000) (citing 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 37.51[7][b] (3d ed.1999)). It is well-established in case law that government officials are presumed to act in good faith, unless a party can provide clear and convincing evidence to the contrary. Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1239-40 (Fed.Cir.2002); SDS Int'l, Inc. v. United States, 55 Fed.Cl. 363, 365 (2003). This presumption is of little use to Defendant in this instance as "[t]he general rule in civil contempt is that a party need not intend to violate an injunction to be found in contempt." Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc., 154 F.3d 1345, 1353 (Fed.Cir.1998) (citing McComb v. Jacksonville Paper Co., 336 U.S. 187, 191-93, 69 S.Ct. 497, 93 L.Ed. 599 (1949)). The primary issue before the Court, therefore, becomes whether the Defendant has, in fact, violated the Court's Opinion and Order dated November 1, 2007.

**B. The Defendant Has Violated the Court's Order Dated November 1, 2007, By Advertising Its Intention To Continue to Procure Dredging Projects Through Contracting By Negotiation Under FAR, Part 15**

The Court, in its Opinion issued on November 1, 2007, ordered the following:

> Defendant, acting by and through the United States Army Corps of Engineers, South Atlantic Division, including their officers, agents, employees, attorneys, and others acting in concert or participation with them, are hereby ENJOINED from using Solicitation No. W912EP-07-R-0007 to receive proposals or to award negotiated IDIQ contracts or task orders for maintenance dredging or shore protection services.

(Opinion, page 23). In its underlying Opinion the Court found that Weeks had established that the agency's solicitation for IDIQ task order contracting was "in violation of 10 U.S.C. § 2304(a), as well as FAR ¶ 6.401(a), FAR ¶ 14.103-1(a), and FAR ¶ 36.103(a)" (Opinion, page 13) and that the proposed procurement lacked a rational basis (Opinion, page 19). In making this ruling the Court not only concluded that that there was no legal or rational basis for the use of IDIQ procurement procedures in dredging, the Court also found, expressly and by necessary implication, that there was no legal or rational basis for SAD to use negotiated contracting procedures for the procurement of maintenance dredging or shore protection projects.

The primary limitation imposed by 10 U.S.C. § 2304(a), as well as FAR ¶ 6.401(a), FAR ¶ 14.103-1(a), and FAR ¶ 36.103(a), is a limitation on the use of any procurement method other than sealed bidding unless certain conditions, not present here, are met. Most assuredly, the Defendant could not have simply reissued the same IDIQ/MATOC procurement with a new solicitation number and then argued that since it was not proceeding with Solicitation No. W912EP-07-R-0007 it was in compliance with the

Court’s Order. The actions of the Defendant here, while not quite that flagrant, are equally egregious and equally defiant of the Court’s Order. When the Court ruled that there was no legal or rational basis to procure maintenance dredging and shore protection projects by negotiation in a grouped, or collective manner (i.e. IDIQ/MATOC), the Court was not simply inviting the Corps of Engineers to circumvent its Order by issuing individual negotiated procurements. This is particularly true of the very same four solicitations that the Corps had proposed to issue as the initial negotiated task order projects. The Court’s Opinion and Order enjoined the IDIQ/MATOC, first and foremost, because there was no legal or rational basis to depart from the use of sealed bidding to procure maintenance dredging and shore protection projects.

The issuance of Presolicitation Notices in FedBizOpps (See Exhibits “A” through “D”) for each of the four projects, advertising an intention to issue negotiated procurements for the four former proposed task order projects is a blatant violation of the Court’s Order. With regard to the project identified as “Maintenance Dredging, 46-Foot Project, Entrance Channel (Cut-1N), Kings Bay, Georgia and Fernandina Harbor, Florida, Nassau County, Florida,” the Presolicitation Notice posted on November 7, 2007, includes the following:

> Award will be made to the offeror whose proposal represents the best value to the Government. The

> Contracting Officer will use a trade-off process to determine which offer represents the best value to the Government. All evaluation factors other than price, when combined, are slightly more important than price. The following factors will be used to determine best value: Technical Merit (plant and equipment availability), Past Performance, and Price.

These evaluation factors are carbon copies of what the Corps had proposed in the earlier IDIQ/MATOC procurement. The Court found that "the agency's stated desire to consider evaluation factors other than price, in the dredging industry, is a weak justification to abandon sealed bidding." (Opinion, page 12).

The Court was also not convinced that "Technical Merit" amounting to nothing more than a determination of "plant and equipment availability" was sufficient to justify a departure from sealed bidding, noting that the factor simply required that the "offeror possess dredging equipment." (Opinion, page 8, 12). Similarly, the Court concluded that the evaluation of past performance is accomplished when an "agency makes standard contractor responsibility determinations under FAR 9.104 in every sealed bid procurement." (Opinion, page 12). It is apparent, therefore, that the only real discriminator between competing offerors will, once again, be price and price alone.

It should also be noted that the Kings Bay procurement is a hopper dredging project where no more than five contractors can reasonably be expected to compete. The Court previously noted that "Weeks and Defendant both acknowledge that the dredging

industry consists of a small group of highly specialized contractors who are well known to SAD.” (Opinion, page 12). Accordingly, just as was the case when the Court issued its Opinion on November 1, 2007, there is no legitimate need to depart from sealed bidding as required by 10 U.S.C. § 2304(a) and FAR 6.401(a).

The November 7 Presolicitation Notice for the Kings Bay project further provides that “This solicitation is being issued in accordance with FAR 6.302-2, Unusual and Compelling Urgency; therefore, the solicitation will be issued on or about 14 November 2007 with proposals due on or about 21 November 2007.” Plaintiff requested the Corps, by letter dated November 8, 2007, to procure the project by sealed bidding. (See Weeks’ letter, Exhibit “E”). Weeks further noted that although the solicitation was being issued on an urgent and compelling basis under FAR 6.302, full and open was nevertheless being employed. That being the case, there is no reason why FAR ¶ 6.302 could not be invoked to facilitate an expedited procurement using sealed bidding. In fact, that would seem to accommodate the “urgency” even further.

The other three Presolicitation Notices were posted on November 8, 2007, and each one provided that the solicitation (in the form of a Request for Proposals) would be issued in <u>nineteen days</u>, on November 27, 2007, with proposals due in <u>thirty-eight days</u>, on January 3, 2008. It is interesting that the Corps

apparently has more than the normal fifteen day sealed bidding synopsis period available, and the Corps has allowed thirty-eight days for proposal preparation, even more than the usual thirty day period often provided in sealed bidding. Not only does this demonstrate that there is sufficient time to employ sealed bidding, it also demonstrates that the Defendant misled the Court when it argued that a decision on the cross-motions for judgment on the administrative record was urgently needed by the Corps no later than November 1, 2007.

In view of the facts described above, the Defendant has violated the Court's Order dated November 1, 2007, by advertising its intention to issue negotiated procurements for the same four projects that were to be the initial task orders on the enjoined IDIQ/MATOC procurement bearing Solicitation No. W912EP-07-R-0007. In doing so, the Defendant has completely ignored the Court's Opinion and Order and has apparently already forgotten the statement that "the Court would be hard-pressed to identify any contracts better suited to sealed bid procurement than dredging. If not appropriate for dredging work, it is difficult to imagine when sealed bidding ought to be used." (Opinion, page 4).

### C. The Violation Was More Than *De Minimis* Or Technical Noncompliance

Given the clarity of the Court's Opinion and Order one would have thought that the Corps of Engineers would have proceeded with an abundance of caution before issuing Presolicitation

Notices to procure the first four projects on a basis other than sealed bidding. It could only be through the most superficial and overly-literal reading of the Court's Opinion that the Defendant could have concluded that the Court only sought to enjoin the IDIQ/MATOC procurement itself and not the first four task orders that were component parts of that procurement. Indeed, it would be unreasonable for SAD to assume that any procurements for maintenance dredging or shore protection could be issued on a basis other than sealed bidding, absent a justification that complies with FAR 6.401. Most assuredly, the justification that was offered by the Defendant in its briefing and oral argument was soundly rejected by the Court.

The issuance of Presolicitation Notices for these four projects is a lot more than technical or minimal noncompliance with the Court's Order, it amounts to disobedience and resistance to a clear and lawful Order of this Court. Filtration Development Co., LLC v. U.S., 63 Fed.Cl. 418 (2005); 28 U.S.C. § 2521(b)(c).

**D. The Conduct Was Not The Product Of A Good Faith And Reasonable Interpretation Of The Court's Order**

If SAD could not legally justify the use of contracting by negotiation for all of its maintenance and shore protection projects for the next five years, it follows that it cannot circumvent the Court's ruling by simply issuing individual negotiated solicitations based on the same underlying facts and

for the very same projects. Why would the Court sanction a method of procurement that it had enjoined collectively simply because the same method of procurement was to be applied on an individual project-by-project basis? Just as the Defendant failed to provide a rational basis for the use of the IDIQ/MATOC procurement procedure in the first place, it also fails to exhibit any reasonable or rational basis to interpret the Court's Order to allow the issuance of these negotiated procurements.

The Defendant is not acting in good faith, nor can it possibly set forth that it is reasonable to apply an overly-literal interpretation of the Court's Order without any consideration of the meaning and intent of the related Opinion of the Court. Given the relative speed with which these Presolicitation Notices were issued, within one week of the Court's Order, and given the agency's lack of supporting documentation in the Administrative Record that it had months to prepare, it is safe to assume that the agency has no legally supportable basis to establish that these projects are now eligible for contracting by negotiation. In fact, the forging ahead with these individual negotiated procurements demonstrates a certain arrogance and degree of defiance that amounts to bad faith.

### E. The Defendant Should Be Directed To Show Cause As to Why It Should Not Be Found To Be In Contempt Of Court

The law provides as follows:

> **(b)** The United States Court of Federal Claims shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority as--
>
> **(1)** misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
>
> **(2)** misbehavior of any of its officers in their official transactions; or
>
> **(3)** disobedience or resistance to its lawful writ, process, order, rule, decree, or command.
>
> **(c)** The United States Court of Federal Claims shall have such assistance in the carrying out of its lawful writ, process, order, rule, decree, or command as is available to a court of the United States. The United States marshal for any district in which the Court of Federal Claims is sitting shall, when requested by the chief judge of the Court of Federal Claims, attend any session of the Court of Federal Claims in such district.

28 U.S.C. § 2521(b)(c).

Given the failure of the Defendant to obey the Court's Order and to comply with the clear language in the Court's Opinion, the Defendant should be required to identify those Government representatives responsible for the decision to proceed with these four negotiated procurements. These individuals should then be ordered to show cause as to why they are not in contempt of this Court's Order and, following a hearing, the Court should take whatever remedial action it deems appropriate.

**F. The Court Is Requested to Amend Its Order Dated November 1, 2007 To Further Clarify The Limits On The Agency's Discretion To Employ Contracting By Negotiation In the Solicitation Of Maintenance Dredging And Shore Protection Projects**

The Plaintiff believes that the limitations on the Defendant's use of FAR, Part 15, Contracting By Negotiation, in the solicitation of maintenance dredging and shore protection projects have been clearly expressed by the Court in its Opinion and Order and that, when read together, the Opinion and Order leave no doubt as to what the Court intended. Nevertheless, if the Court concludes that an amendment of its Order is appropriate under COFC Rule 59(e), the Court is respectfully requested to order that the Defendant is further enjoined from proceeding with the four previously identified task order procurements using any procurement method other than sealed bidding; and, that the Defendant is enjoined from employing any procurement method other than sealed bidding in the solicitation of maintenance dredging and shore protection projects unless there is a sufficient legal or rational basis to do otherwise under 10 U.S.C. § 2304(a) and FAR ¶ 6.401(a).

The suggested clarification and amendment of the Court's Order will serve the interests of judicial economy by making repetitive protests by members of the dredging industry unnecessary. Unfortunately, the recent actions of the Defendant strongly suggest that the Corps of Engineers does not accept the

ruling of the Court and that the Corps of Engineers will seek to circumvent that ruling unless further clarification is provided.

**CONCLUSION**

Plaintiff respectfully submits that the requested relief is urgently needed to prevent the issuance of negotiated solicitations in defiance of the Court's Opinion and Order dated November 1, 2007. Based on the foregoing facts and analysis, Plaintiff respectfully requests the Court to grant its Motion. In view of the pending issuance of the Kings Bay solicitation on November 14, 2007, an expedited hearing and expedited consideration of this Motion are requested.

Respectfully submitted,

/s/ Michael H. Payne

DATED: November 12, 2007

Michael H. Payne, Esquire
Payne Hackenbracht & Sullivan
220 Commerce Dr., Suite 100
Ft. Washington, PA 19034
215-542-2777
215-542-2779(fax)
mhp@phslegal.com

Attorney of Record for
WEEKS MARINE, INC.

OF COUNSEL:

Joseph A. Hackenbracht, Esquire
Timothy A. Sullivan, Esquire
Payne Hackenbracht & Sullivan

# Z--Maintenance Dredging, 46-Foot Project, Entrance Channel (Cut-1N), Kings Bay, Georgia and Fernandina Harbor, Florida, Nassau County, Florida

---

---

### General Information

| | |
|---|---|
| Document Type: | Presolicitation Notice |
| Solicitation Number: | W912EP-08-R-0004 |
| Posted Date: | Nov 07, 2007 |
| Original Response Date: | Nov 21, 2007 |
| Current Response Date: | Nov 21, 2007 |
| Original Archive Date: | Jan 20, 2008 |
| Current Archive Date: | Jan 20, 2008 |
| Classification Code: | Z -- Maintenance, repair, and alteration of real property |
| Set Aside: | N/A |
| Naics Code: | 237990 -- Other Heavy and Civil Engineering Construction |

### Contracting Office Address

US Army Engineer District, Jacksonville, P.O. Box 4970, Jacksonville, FL 32232-0019

### Description

The project work consists of removing shoals along the Entrance Channel Cut-1N to a required depth of 49 feet plus 2 feet allowable overdepth. The Contract Base Bid is to dredge approximately 650,000 cubic yards (cy) of material from Station 220+00 to Station 340+00 with placement in the designated ocean disposal area, D/A-O, located approximately 12.5 miles from the project site. Option A is to dredge approximately 15,000 cy of material from Station 80+00 to Station 100+00 with placement in the des ignated ocean disposal area, D/A-O. Option B is to dredge approximately 50,000 cy of material from Station 100+00 to Station 220+00 with placement in the designated Fort Clinch disposal area (South Jetty Placement Area), D/A-Ft. Clinch, located approximat ely 2 miles from the project site. Work also includes turbidity monitoring, endangered species monitoring, beach tilling, and possible sea turtle trawling and relocation. Only hopper dredges will be allowed to work on this contract. Magnitude of construc tion is between $5,000,000.00 and $10,000,000.00. THIS

PROCUREMENT IS AN UNRESTRICTED ACQUISITION. COAST GUARD CERTIFICATION OF VESSELS IS REQUIRED. ALL RESPONSIBLE OFFERORS ARE ENCOURAGED TO PARTICIPATE. There will be a price preference for certified HUBZone small business concerns that comply with the requirements in the solicitation as stipulated in FAR 19.1307. Award will be made to the offeror whose proposal represents the best value to the Government. The Contracting Officer will use a trade-off process to determine which offer represents the best value to the Government. All evaluation factors other than price, when combined, are slightly more important than price. The following factors will be used to determine best value: Technical Merit (p lant and equipment availability), Past Performance, and Price. COMPRESSED TIMEFRAMES: This solicitation is being issued in accordance with FAR 6.302-2, Unusual and Compelling Urgency; therefore, the solicitation will be issued on or about 14 November 200 7 with proposals due on or about 21 November 2007. In addition, the government anticipates that award will be made on or about 30 November and that the Notice to Proceed will be issued within 15 days after award. Solicitation will be issued in electronic format only and will be posted on the Army Single Face to Industry (ASFI) website at https://acquisition.army.mil/asfi/. In order to receive notification of any amendments to this solicitation, interested vendors must REGISTER TO RECEIVE NOTIFICATION on the Federal Business Opportunities website at http://www.fedbizopps.gov/. If you are not registered, the Government is not responsible with providing you with notification of any changes to this solicitation. In addition, in order to generate a Plan Hold ers List, all interested bidders must also REGISTER AS INTERESTED VENDOR which is also located on the Federal Business Opportunities website at http://www.fedbizopps.gov/. You must be registered in the Central Contractor Registration in order to be eligib le to receive an award from this solicitation. Please call 1-888-227-2423 for more information or visit the CCR website at http://www.ccr.gov. You must be registered in the Online Representations and Certifications Application (ORCA) in order to be eligi ble to receive an award from any Government solicitation. For more information, visit the ORCA website at http://orca.bpn.gov/. The NAICS Code is 237990 and the size standard is $18.5 Million Dollars.

**Point of Contact**

Dolly Colwell, (904) 232-3739

Email your questions to US Army Engineer District, Jacksonville at Dolly.M.Colwell@us.army.mil

**Place of Performance**

Address: US Army Engineer District, Jacksonville P.O. Box 4970, Jacksonville FL
Postal Code: 32232-0019
Country: US

Register to Receive Notification

**Government-wide Numbered Notes**
**You may return to Business Opportunities at:**

- USA COE listed by [Posted Date]
- USA Agencywide listed by [Posted Date]

[Home] [SEARCH synopses] [Procurement Reference Library]

# Z--Maintenance Dredging and Advance Maintenance Dredging, Intracoastal Waterway, Jacksonville to Miami, Florida, 12-Foot Project, Cut-V22 through Cut V-36, Volusia County, Florida

### General Information

| | |
|---|---|
| Document Type: | Presolicitation Notice |
| Solicitation Number: | W912EP-08-R-0005 |
| Posted Date: | Nov 08, 2007 |
| Original Response Date: | Jan 03, 2008 |
| Current Response Date: | Jan 03, 2008 |
| Original Archive Date: | Mar 03, 2008 |
| Current Archive Date: | Mar 03, 2008 |
| Classification Code: | Z -- Maintenance, repair, and alteration of real property |
| Set Aside: | Total Small Business |
| Naics Code: | 237990 -- Other Heavy and Civil Engineering Construction |

### Contracting Office Address

US Army Engineer District, Jacksonville, P.O. Box 4970, Jacksonville, FL 32232-0019

### Description

Base work includes dredging approximately 257,000 cubic yards of material from Cut V-24 through Cut V-31. Work also includes the advance maintenance dredging of Settling Basin V-26, which consists of approximately 40,000 cubic yards of material. Sett ling Basin V-26 has not previously been dredged. Excavated material from this portion of the contract shall be placed on New Smyrna Beach, between FDEP DNR monuments R-161 through R-174. Work includes turbidity monitoring, endangered species monitoring, vi bration monitoring, and beach tilling along New Smyrna Beach. Base work also includes placement of Stone Protection at the outfall of MSA-434C. Stone Protection consists of rip rap and filter material. OPTION 1, Middle Reach, work includes dredging appro ximately 72,000 cubic yards of material from Cut V-32 through Cut V-33, and Cut V-

35. Excavated material from this portion of the contract shall be placed on New Smyrna Beach, between FDEP DNR monuments R-161 through R-174. Work includes turbidity monitori ng, endangered species monitoring, vibration monitoring, and beach tilling along New Smyrna Beach. OPTION 2, North Reach, work includes dredging approximately 190,000 cubic yards of material from Cut V-22 through Cut V-23. Excavated material from this por tion of the contract shall be placed in DMMA MSA-434C. Work includes turbidity monitoring and endangered species monitoring. OPTION 3, Settling Basin V-23, work includes the advance maintenance dredging of Settling Basin V-23, which consists of approximate ly 100,000 cubic yards of material. Settling Basin V-23 has not previously been dredged. Excavated material from this portion of the contract shall be placed in DMMA MSA-434C. Work includes turbidity monitoring and endangered species monitoring. Magnitude of construction is between $10,000,000.00 and $25,000,000.00. THIS PROCUREMENT IS SET-ASIDE FOR SMALL BUSINESS. ALL RESPONSIBLE OFFERORS ARE ENCOURAGED TO PARTICIPATE. Award will be made to the offeror whose proposal represents the best value to the Go vernment. The Contracting Officer will use a trade-off process to determine which offer represents the best value to the Government. All evaluation factors other than price, when combined, are slightly more important than price. The following factors wi ll be used to determine best value: Technical Merit, Past Performance, and Price. The solicitation will be issued on or about 26 November 2007 with proposals due on or about 3 January 2008. Solicitation will be issued in electronic format only and will be posted on the Army Single Face to Industry (ASFI) website at https://acquisition.army.mil/asfi/. In order to receive notification of any amendments to this solicitation, interested vendors must REGISTER TO RECEIVE NOTIFICATION on the Federal Business O pportunities website at http://www.fedbizopps.gov/. If you are not registered, the Government is not responsible with providing you with notification of any changes to this solicitation. In addition, in order to generate a Plan Holders List, all interest ed bidders must also REGISTER AS INTERESTED VENDOR which is also located on the Federal Business Opportunities website at http://www.fedbizopps.gov/. You must be registered in the Central Contractor Registration in order to be eligible to receive an award from this solicitation. Please call 1-888-227-2423 for more information or visit the CCR website at http://www.ccr.gov. You must be registered in the Online Representations and Certifications Application (ORCA) in order to be eligible to receive an awar d from any Government solicitation. For more information, visit the ORCA website at http://orca.bpn.gov/. The NAICS Code is 237990 and the size standard is $18.5 Million Dollars. To be considered small for purposes of Government procurement a firm must p erform at best 40 percent of the volume dredged with its own equipment or equipment owned by another small dredging concern. See government-wide numbered note 1 .

**Point of Contact**

Karla M. Garcia , 904 2321015

Email your questions to US Army Engineer District, Jacksonville at karla.m.garcia@saj02.usace.army.mil

**Place of Performance**

Address: US Army Engineer District, Jacksonville P.O. Box 4970, Jacksonville FL
Postal Code: 32232-0019
Country: US

Register to Receive Notification

---

**Government-wide Numbered Notes**
**You may return to Business Opportunities at:**

- USA COE listed by [Posted Date]
- USA Agencywide listed by [Posted Date]

---

[Home] [SEARCH synopses] [Procurement Reference Library]

Vendors
Federal Business Opportunities

# Z--Captiva Island, Beach Renourishment Project, Lee County, Florida

### General Information

| | |
|---|---|
| Document Type: | Presolicitation Notice |
| Solicitation Number: | W912EP-08-R-0006 |
| Posted Date: | Nov 08, 2007 |
| Original Response Date: | Jan 03, 2008 |
| Current Response Date: | Jan 03, 2008 |
| Original Archive Date: | Mar 03, 2008 |
| Current Archive Date: | Mar 03, 2008 |
| Classification Code: | Z -- Maintenance, repair, and alteration of real property |
| Set Aside: | N/A |
| Naics Code: | 237990 -- Other Heavy and Civil Engineering Construction |

### Contracting Office Address

US Army Engineer District, Jacksonville, P.O. Box 4970, Jacksonville, FL 32232-0019

### Description

Work includes dredging shoal material from Ocean Borrow Area VI located approximately 8.0 miles west of Captiva Island, Lee County, (Ft Myers area)Florida. Borrow area sectors may be cut to 43.5-feet, 44-feet and 46.5-feet NGVD. Place 40,000 cubic y ards of dredged material on Captiva Island between R-85 and R-86; and place 40,000 cubic yards of dredged material between R-93 and R-96 to contract beach section. Work also includes endangered species monitoring (hopper dredge only), vibration controls a nd monitoring, grade stake installation, control and recovery, turtle trawler mobilization/demobilization (hopper dredge only), and relocation trawling (hopper dredge only). Dredge shall be Load-Line Coast Guard Certified. Magnitude of construction is be tween $1,000,000.00 and $5,000,000.00. THIS PROCUREMENT IS AN UNRESTRICTED ACQUISITION. ALL RESPONSIBLE OFFERORS ARE ENCOURAGED TO PARTICIPATE. There will be a price preference for certified HUBZone small business concerns that comply with the requireme nts in the solicitation as stipulated in FAR 19.1307. Award will be made to the offeror whose proposal represents the best value to the Government. The Contracting Officer will use a trade-off process to determine which offer

represents the best value to the Government. All evaluation factors other than price, when combined, are slightly more important than price. The following factors will be used to determine best value: Technical Merit, Past Performance, and Price. The solicitation will be issued o n or about 26 November 2007 with proposals due on or about 3 January 2008. Solicitation will be issued in electronic format only and will be posted on the Army Single Face to Industry (ASFI) website at https://acquisition.army.mil/asfi/. In order to rece ive notification of any amendments to this solicitation, interested vendors must REGISTER TO RECEIVE NOTIFICATION on the Federal Business Opportunities website at http://www.fedbizopps.gov/. If you are not registered, the Government is not responsible wit h providing you with notification of any changes to this solicitation. In addition, in order to generate a Plan Holders List, all interested bidders must also REGISTER AS INTERESTED VENDOR which is also located on the Federal Business Opportunities websit e at http://www.fedbizopps.gov/. You must be registered in the Central Contractor Registration in order to be eligible to receive an award from this solicitation. Please call 1-888-227-2423 for more information or visit the CCR website at http://www.ccr. gov. You must be registered in the Online Representations and Certifications Application (ORCA) in order to be eligible to receive an award from any Government solicitation. For more information, visit the ORCA website at http://orca.bpn.gov/. The NAICS Code is 237990 and the size standard is $18.5 Million Dollars.

**Point of Contact**

Willie Mays, 904-232-3535

Email your questions to US Army Engineer District, Jacksonville at Ann.Mays@saj02.usace.army.mil

**Place of Performance**

Address: US Army Engineer District, Jacksonville P.O. Box 4970, Jacksonville FL
Postal Code: 32232-0019
Country: US

Register to Receive Notification

---

**Government-wide Numbered Notes**
**You may return to Business Opportunities at:**

- USA COE listed by [Posted Date]
- USA Agencywide listed by [Posted Date]

---

[Home] [SEARCH synopses] [Procurement Reference Library]

Vendors
Federal Business Opportunities

# Z--U.S. Naval Station, Mayport, Florida, Entrance Channel, Turning Basin, Destroyer Slip, Carrier Basin, and Pier C-2, Maintenance Dredging, 42-Foot Project.

---

---

### General Information

| | |
|---|---|
| Document Type: | Presolicitation Notice |
| Solicitation Number: | W912EP-08-R-0007 |
| Posted Date: | Nov 08, 2007 |
| Original Response Date: | Jan 03, 2008 |
| Current Response Date: | Jan 03, 2008 |
| Original Archive Date: | Mar 03, 2008 |
| Current Archive Date: | Mar 03, 2008 |
| Classification Code: | Z -- Maintenance, repair, and alteration of real property |
| Set Aside: | N/A |
| Naics Code: | 237990 -- Other Heavy and Civil Engineering Construction |

### Contracting Office Address

US Army Engineer District, Jacksonville, P.O. Box 4970, Jacksonville, FL 32232-0019

### Description

The project work includes dredging approximately 593,000 cubic yards of material from Entrance Channel, Turning Basin, Carrier Settling Basin, Pier C-2, Industrial Wharf, and Southern Bulkhead. Excavated material from this portion of the project sha ll be placed in the Jacksonville Offshore Dredged Material Disposal Site (ODMDS). Work also includes dredging approximately 74,000 cubic yards of material from Destroyer Slip. Excavated material shall be placed in the Mayport Naval Station Upland Disposal Area D/A-O. Additionally, approximately 11,000 cubic yards of material shall be dredged from the Small Craft Basin., and the excavated material shall be placed in the Mayport Naval Station Upland Disposal Area D/A-O. All work shall be to project depth w ith an allowable 2-foot overdepth. All work includes turbidity monitoring and endangered species monitoring. The following requirements apply to Hopper Dredges only: (1) work is restricted between the period of 15 December 31 March, (2) sea turtle trawl ing and relocation shall be required if sea turtles are

taken, (3) Silent Inspector certification is required prior to NTP. Magnitude of construction is between $5,000,000.00 and $10,000,000.00. THIS PROCUREMENT IS AN UNRESTRICTED ACQUISITION. Load Line Certification is required for all scows and/or hopper dredges operating seaward of Cut-3 Station 180+00. All other dredge plants shall meet the requirements as specified by EM 385-1-1, paragraph 19.A.01 Floating Plant Inspection and Certification. ALL RE SPONSIBLE OFFERORS ARE ENCOURAGED TO PARTICIPATE. There will be a price preference for certified HUBZone small business concerns that comply with the requirements in the solicitation as stipulated in FAR 19.1307. Award will be made to the offeror whose p roposal represents the best value to the Government. The Contracting Officer will use a trade-off process to determine which offer represents the best value to the Government. All evaluation factors other than price, when combined, are slightly more impo rtant than price. The following factors will be used to determine best value: Technical Merit, Past Performance, and Price. The solicitation will be issued on or about 26 November 2007 with proposals due on or about 3 January 2008. Solicitation will be issued in electronic format only and will be posted on the Army Single Face to Industry (ASFI) website at https://acquisition.army.mil/asfi/. In order to receive notification of any amendments to this solicitation, interested vendors must REGISTER TO REC EIVE NOTIFICATION on the Federal Business Opportunities website at http://www.fedbizopps.gov/. If you are not registered, the Government is not responsible with providing you with notification of any changes to this solicitation. In addition, in order to generate a Plan Holders List, all interested bidders must also REGISTER AS INTERESTED VENDOR which is also located on the Federal Business Opportunities website at http://www.fedbizopps.gov/. You must be registered in the Central Contractor Registration in order to be eligible to receive an award from this solicitation. Please call 1-888-227-2423 for more information or visit the CCR website at http://www.ccr.gov. You must be registered in the Online Representations and Certifications Application (ORCA) in order to be eligible to receive an award from any Government solicitation. For more information, visit the ORCA website at http://orca.bpn.gov/. The NAICS Code is 237990 and the size standard is $18.5 Million Dollars. THE POINT OF CONTACT FOR THIS SOL ICITATION IS Veronica S. Taylor, Contract Specialist, Veronica.S.Taylor@saj02.usace.army.mil, phone number (904) 232-2107.

**Point of Contact**

Karla M. Garcia , 904 2321015

Email your questions to US Army Engineer District, Jacksonville at karla.m.garcia@saj02.usace.army.mil

**Place of Performance**

Address: US Army Engineer District, Jacksonville P.O. Box 4970, Jacksonville FL
Postal Code: 32232-0019
Country: US

Register to Receive Notification

---

**Government-wide Numbered Notes**
**You may return to Business Opportunities at:**

- USA COE listed by [Posted Date]
- USA Agencywide listed by [Posted Date]

---

WEEKS MARINE, INC.

DREDGING – MARINE CONTRACTORS
STEVEDORING – EQUIPMENT RENTALS
TOWING – HEAVY LIFT – SALVAGE

304 GAILLE DRIVE • COVINGTON, LA 70433 Office (985) 875-2500 Fax (985) 875-2572

November 8, 2007

Department of the Army
Jacksonville District, Corps of Engineers
P.O. Box 4970
Jacksonville, FL 32232

Attn: Dolly Colwell

Re: Maintenance Dredging, Kings Bay, Georgia and Fernandina, FL
Solicitation No. W912EP-08-R-0004

Dear Ms. Colwell:

Weeks Marine, Inc. (WMI) is in receipt of the Presolicitation Notice associated with the referenced project. Although the solicitation is being issued under the authority of FAR 6.302 on an urgent and compelling basis, full and open competition is nevertheless being employed.

As you are aware, there are only five companies that possess the hopper dredging equipment required to perform the work. In light of the recent finding of the United States Court of Federal Claims that sealed bidding is the preferred method for the procurement of dredging, we see no reason why this project is being solicited as an RFP utilizing tradeoff procedures. The only "technical" evaluation factor is "plant and equipment availability", and that factor as well as past performance is more approriately evaluated under FAR 9.104.

Since this project was one of the four proposed task orders included in the recent MATOC solicitation that was enjoined by the Court, the solicitation of one of those projects on an RFP basis would seem to violate the spirit, intent and even the letter of the Court's recent decision. You are respectfully requested to procure this project through the use of sealed bidding, as permitted by 10 U.S.C. 2304(c)(2) and FAR 6.302-2.

Sincerely,

WEEKS MARINE, INC.

J. Stephen Chatry
Vice President

EXHIBIT E